# In the United States Court of Federal Claims

No. 12-184T
Filed: September 19, 2014
Reissued: October 20, 2014

```
* * * * * * * * * * * * * *      *
ALBEMARLE CORPORATION &          *
SUBSIDIARIES,                    *        Tax; Foreign Tax Credit, 26
                                 *        U.S.C. § 901; Motion to Dismiss;
                Plaintiff,       *        Statute of Limitations.
        v.                       *
                                 *
UNITED STATES,                   *
                                 *
                Defendant.       *
                                 *
* * * * * * * * * * * * * *      *
```

Jerome B. Libin, Sutherland Asbill & Brennan LLP, Washington D.C, for the plaintiff. With him was Jeffrey N. Starkey, Sutherland Asbill & Brennan LLP, Washington D.C.

Benjamin C. King, Jr., Department of Justice, Tax Division, Court of Federal Claims Section, Washington, D.C., for the defendant.  With him were David I. Pincus, Chief, Court of Federal Claims Section, and Kathryn Keneally, Assistant Attorney General, Tax Division, United States Department of Justice. Barbara A. Felker, Internal Revenue Service, Washington, D.C., of counsel.

## O P I N I O N

HORN, J.

### FINDINGS OF FACT

Plaintiff, Albemarle Corporation & Subsidiaries (Albemarle), filed a complaint in the United States Court of Federal Claims, seeking a tax refund in the amount of $825,846.00, plus interest, for taxes paid in the 1997 tax year and 1998 tax year. Plaintiff alleges that the Internal Revenue Service (IRS) incorrectly disallowed plaintiff's refund claims for foreign tax credits related to its Belgian subsidiary.

On December 31, 1996, a Belgian subsidiary of Albemarle,[1] Albemarle S.A.,[2] issued registered debentures to Albemarle and "other members of the Albemarle Consolidated Group." The debentures provided for semi-annual interest payments at a rate of 6.8% per annum. Albemarle S.A. paid interest each year on the debentures between 1997-2001, although only 1997 and 1998 are at issue in the above captioned case. Albemarle S.A. did not pay any Belgian withholding tax with regard to the interest payments on the debentures prior to October 22, 2001 because Albemarle S.A. believed that the interest payments made on the debentures were exempt from Belgian withholding tax. Plaintiff filed its 1997 United States tax return on September 15, 1998 and its 1998 United States tax return on September 15, 1999.[3] As indicated in plaintiff's complaint, "[p]laintiff paid the tax shown on each return within the time prescribed by law."

On October 22, 2001, the Belgian tax authorities issued a notice of adjustment to Albemarle S.A. for the tax years 1996 through 1998. The notice of adjustment provided that debenture interest payments made by Albemarle S.A. during 1997 and 1998 were subject to Belgian withholding tax at the statutory rate of 25%. On December 3, 2001, Albemarle S.A. submitted a written protest of the notice of adjustment. On January 31, 2002, Albemarle S.A. and the Belgian tax authorities reached an agreement pursuant to which Albemarle S.A. would pay the Belgian withholding taxes at a tax rate of 15%[4] on the debenture interest payments it had made in 1997-2001. After the settlement agreement was finalized, Albemarle S.A. made full payment to the Belgian tax authorities in the amount of $1,416,740.00 on January 31, 2002 and August 29, 2002. That total was allocated to each of the tax years 1997-2001 as follows: $412,923.00 for 1997, $412,923.00 for 1998, $412,923.00 for 1999, $111,897.00 for 2000, and $66,074.00 for 2001.

---

[1] The parties agree that plaintiff Albemarle is a domestic corporation.

[2] Albemarle S.A. changed its name to Albemarle Europe SPRL on September 15, 2009. The parties identify the renamed entity differently in their filings, with the plaintiff referring to Albemarle Europe SPRL as "Albemarle-Belgium," and the defendant referring to Albemarle Europe SPRL as "Albemarle Europe."

[3] As noted by defendant, "[p]laintiff filed its returns on a calendar year basis so its returns for 1997 and 1998 were originally due on March 15, 1998 and 1999, respectively, but were filed on September 15, 1998 and 1999, respectively, because of automatic extensions plaintiff obtained." Regarding the 1997 tax year, defendant also states that "[i]t is not disputed that plaintiff's claim is for 1997, and that the due date of its return for that year was March 15, 1998."

[4] In its complaint, plaintiff states that the notice of adjustment imposed taxes "at the Belgian statutory rate of 25% rather than at the 15% rate prescribed by the United States – Belgium Income Tax Convention."

On May 15, 2009, seven years after the Belgian withholding taxes were paid by Albemarle S.A., plaintiff filed with the United States IRS "an administrative refund claim in the form of an amended consolidated income tax return (Form 1120-X) for the 2002 tax year."[5] Although the settlement with the Belgian tax authorities was finalized, and the taxes were paid, in 2002, plaintiff did not file protective refund claims for the tax years at issue.[6] The tax return sought a refund in the amount of $961,841.00, plus interest, reflecting a claim for $1,416,740.00 in foreign tax credits attributable to the Belgian withholding taxes paid pursuant to the agreement with the Belgian tax authorities.  After filing, plaintiff and the IRS agreed that the 2002 amended income tax return constituted claims for plaintiff's 1997, 1998, 1999, 2000, and 2001 tax years. Relevant to the above captioned case, based on the Belgian withholding tax plaintiff paid in 2002, plaintiff claimed entitlement to a foreign tax credit for the 1997 tax year in the amount of $412,923.00, and to a foreign tax credit for the 1998 tax year, also in the amount of $412,923.00.

Although permitting plaintiff's refund claims for tax years 1999, 2000, and 2001, on January 20, 2012, the IRS disallowed plaintiff's 1997 and 1998 tax refund claims because the IRS indicated that 1997 and 1998 tax refund claims were not filed within the period set forth in 26 U.S.C. § 6511(d)(3)(A) (2012) for filing a claim seeking a refund based on a foreign tax credit.[7]  The IRS determined that to be timely, plaintiff's 1997 refund claim should have been filed on or before March 15, 2008, and its 1998 refund claim should have been filed on or before March 15, 2009.

After the IRS disallowed the 1997 and 1998 tax refund claims, plaintiff timely filed suit in this court, seeking a refund of $825,846.00, plus interest for taxes paid for its

---

[5] The Form 1120-X for the 2002 tax year indicated that Albemarle was an accrual method taxpayer.

[6] Plaintiff filed the refund claims on May 15, 2009.  Defendant alleges in its motion to dismiss, and plaintiff does not contest, that plaintiff did not "allege that it filed any protective refund claims for 1997 or 1998, as provided in Treas. Reg. § 301.6402-2, to ensure that the statute of limitations would not expire on any claim for refund based on additional foreign tax credits."

[7] On July 12, 2010, the IRS issued plaintiff a 30-day letter proposing a partial disallowance of plaintiff's refund claims. The letter proposed permitting plaintiff's claims for the 1999, 2000, and 2001 tax years, but disallowing the 1997 and 1998 tax year claims because the refund claims were not filed within applicable statute of limitations. Plaintiff's complaint alleges that "[o]n or about July 30, 2010, Plaintiff filed a written protest with IRS Appeals, contesting the proposed disallowance of Plaintiff's 1997 and 1998 Refund Claims," and indicated that "[p]laintiff and the IRS were unable to agree on an administrative resolution of the issues presented by Plaintiff's 1997 and 1998 Refund Claims." Plaintiff also alleged that "[o]n or about January 20, 2012, Plaintiff received a formal notice of disallowance from the IRS stating that Plaintiff's 1997 and 1998 Refund Claims had been disallowed in full."

1997 tax year and 1998 tax year.  Specifically, plaintiff seeks a refund in the amount of $412,923.00 for the 1997 tax year, and a refund for the 1998 tax year in the amount of $412,923.00. Plaintiff argues that, although the Belgian taxes actually accrued in 2002, they should be deemed to have accrued in 1997 and 1998 for the purposes of claiming the foreign tax credit. Therefore, plaintiff contends that "Albemarle's 1997 and 1998 refund claims were timely filed within the period of limitations prescribed by section 6511(d)(3)(A). Accordingly, this Court has jurisdiction over the complaint filed in this case." In response, defendant filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(6) (2014) of the Rules of the United States Court of Federal Claims (RCFC). In the government's motion to dismiss, the defendant states that the "[d]efendant's motion is based on the facts alleged in the complaint. Defendant contends that even if those alleged facts are true, they do not establish that this Court has subject matter jurisdiction over the claims in issue."[8] Defendant alleges that this court lacks subject matter jurisdiction "because the refund claims for 1997 and 1998, based on credits for foreign taxes that accrued in those years, were filed beyond the period in 26 U.S.C. § 6511(d)(3) for filing a claim for refund based on a foreign tax credit." Defendant argues that "a contested foreign tax accrues in the tax year to which the tax relates, not in the year when the contest is resolved and the foreign tax is paid," (citing Revenue Ruling 84-125) and because the refund claims relate back to the 1997 and 1998 tax years, by filing its claim for refund on May 15, 2009, plaintiff's claims were untimely.

## DISCUSSION

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2012) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546

---

[8] In considering the motion to dismiss, the court assumes that all undisputed facts alleged in the complaint are true and draws all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002))).

U.S. at 506; <u>see also</u> <u>Cent. Pines Land Co., L.L.C. v. United States</u>, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 506)); <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. at 506; <u>Folden v. United States</u>, 379 F.3d 1344, 1354 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2004), <u>cert. denied</u>, 545 U.S. 1127 (2005); and <u>Fanning, Phillips & Molnar v. West</u>, 160 F.3d 717, 720 (Fed. Cir. 1998))); <u>Mata v. United States</u>, No. 09-796C, 2014 WL 4380046, at *3 (Fed. Cl. Sept. 3, 2014). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise *sua sponte*, even where . . . neither party has raised this issue." <u>Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings</u>, 370 F.3d 1354, 1369 (Fed. Cir.) (citing <u>Textile Prods., Inc. v. Mead Corp.</u>, 134 F.3d 1481, 1485 (Fed. Cir.), <u>reh'g denied and en banc suggestion declined</u> (Fed. Cir.), <u>cert. denied</u>, 525 U.S. 826 (1998)), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2004), <u>cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc.</u>, 546 U.S. 975 (2005), <u>cert. dismissed as improvidently granted</u>, 548 U.S. 124 (2006).

Pursuant to the RCFC and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2014); Fed. R. Civ. P. 8(a)(1), (2) (2014); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-78 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." <u>Holley v. United States</u>, 124 F.3d 1462, 1465 (Fed. Cir.) (citing <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1 (1983)), <u>reh'g denied</u> (Fed. Cir. 1997); <u>see also</u> <u>Compliance Solutions Occupational Trainers, Inc. v. United States</u>, No. 13-194C, 2014 WL 4557648, at *3 (Fed. Cl. Sept. 3, 2014); <u>Gonzalez-McCaulley Inv. Grp., Inc. v. United States</u>, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." <u>Bradley v. Chiron Corp.</u>, 136 F.3d 1317, 1322 (Fed. Cir. 1998); <u>see also</u> <u>McZeal v. Sprint Nextel Corp.</u>, 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, <u>Federal Practice and Procedure</u> § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" <u>Three S Consulting v. United States</u>, 104 Fed. Cl. 510, 523 (2012) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555), <u>aff'd</u>, 562 F. App'x 964 (Fed. Cir.), <u>reh'g denied</u> (Fed. Cir. 2014). As stated in <u>Ashcroft v. Iqbal</u>, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F. 3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In Ontario Power Generation, Inc. v. United States, the United

States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 7. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also Testan [v. United States], 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, "the statute and regulations must be such that they '"can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained."'" Roberts v. United States, 745 F.3d 1158, 1162 (Fed. Cir. 2014) (quoting United States v. White Mountain Apache Tribe, 537 U.S. at 472 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. Navajo Nation, 556 U.S. at 290; United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating,

the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

Regarding a tax refund suit, "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a claim for refund or credit has been duly filed with the Secretary [of the Treasury]." 26 U.S.C. § 7422 (2012).  In United States v. Clintwood Elkhorn Mining Co., the United States Supreme Court indicated that:

> A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims. The Internal Revenue Code specifies that before doing so, the taxpayer must comply with the tax refund scheme established in the Code. That scheme provides that a claim for a refund must be filed with the Internal Revenue Service (IRS) before suit can be brought, and establishes strict timeframes for filing such a claim.

United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 4 (2008) (citing 28 U.S.C. § 1346(a)(1))[9] and EC Term of Years Trust v. United States, 550 U.S. 429, 431, & n.2 (2007)).   "[T]ax refund suits fall within the jurisdiction of the Court of Federal Claims, provided full payment of any assessment is first made by the claimant to the IRS." Manor Care, Inc. v. United States, 89 Fed. Cl. 618, 622 (2009) (citing 28 U.S.C. § 1346(a), Flora v. United States, 362 U.S. 145, 177, reh'g denied, 362 U.S. 972 (1960), and Shore v. United States, 9 F.3d 1524, 1527 (Fed. Cir. 1993)), aff'd, 630 F.3d 1277 (Fed. Cir. 2011); see also Hall v. United States, 111 Fed. Cl. 766, 769 (2013) (citing 28 U.S.C. § 1346(a)(1) and Roberts v. United States, 242 F.3d 1065, 1067 (Fed. Cir. 2001)); Buser v. United States, 85 Fed. Cl. 248, 256 (2009) ("It is 'undisputed' that the

---

[9] The statute at 28 U.S.C. § 1346 provides that:

> **(a)** The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> **(1)** Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws. . . .

28 U.S.C. § 1346(a)(1).

Court of Federal Claims possesses the authority to adjudicate tax refund claims.") (citations omitted).

According to the United States Court of Appeals for the Federal Circuit, "in the context of tax refund suits, the [Supreme] Court has held that the Court of Federal Claim's Tucker Act jurisdiction is limited by the Internal Revenue Code, including 26 U.S.C. § 7422(a)."[10] RadioShack Corp. v. United States, 566 F.3d at 1360 (citing United States v. Clintwood Elkhorn Mining Co., 553 U.S. at 4 and United States v. A.S. Kreider Co., 313 U.S. 443, 447–48 (1941)); see also United States v. Dalm, 494 U.S. 596, 609-10, reh'g denied, 495 U.S. 941 (1990); Strategic Hous. Fin. Corp. v. United States, 608 F.3d 1317, 1324 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2010), cert. denied, 131 S. Ct. 1513 (2011).  Stated another way, "[i]n the context of tax refund suits, the United States sovereign immunity is construed narrowly and jurisdiction of the Court of Federal Claims is limited by the Internal Revenue Code, including 26 U.S.C. § 7422." Waltner v. United States, 679 F.3d 1329, 1332 (Fed. Cir.), cert. denied, 133 S. Ct. 319, reh'g denied, 133 S. Ct. 688 (2012); see id. at 1332 ("Thus, whether sovereign immunity has been waived and the Court of Federal Claims has jurisdiction over these refund claims depends on whether the taxpayers' submissions to the IRS constitute a claim for refund.").

Essentially, 26 U.S.C. § 7422(a) functions as a waiver of the government's sovereign immunity in tax refund suits.  See Chicago Milwaukee Corp. v. United States, 40 F.3d 373, 374 (Fed. Cir. 1994); see also Ishler v. United States, 115 Fed. Cl. 530, 534-35 (2014); Tieman v. United States, 113 Fed. Cl. 528, 531 (2013).  "[S]ection 7422(a) creates a jurisdictional prerequisite to filing a refund suit."  Chicago Milwaukee Corp. v. United States, 40 F.3d at 374 (citing Chicago Milwaukee Corp. v. United States, 40 F.3d at 374 (citing Burlington N., Inc. v. United States, 231 Ct. Cl. 222, 684 F.2d 866, 868 (1982))).  Moreover, once a party has established compliance with 26 U.S.C. § 7422(a), the party may, if successful, also recover interest for its refund claim.

---

[10] The statute at 28 U.S.C. § 1346 provides that:

> **(b)** The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> **(1)** Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws. . . .

28 U.S.C. § 1346(a)(1); see also Manor Care, Inc. v. United States, 89 Fed. Cl. at 622 ("[T]ax refund suits fall within the jurisdiction of the Court of Federal Claims, provided full payment of any assessment is first made by the claimant to the IRS." (citing 28 U.S.C. § 1346(a), Flora v. United States, 362 U.S. at 177 and Shore v. United States, 9 F.3d at 1527)).

<u>See</u> <u>Deutsche Bank AG v. United States</u>, 95 Fed. Cl. 423, 427 n.3 (2010) (citing <u>Brown & Williamson, Ltd. v. United States</u>, 231 Ct. Cl. 413, 688 F.2d 747, 752 (1982)) ("There is no question, however, that this court has subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2006), over claims, such as the present one, seeking to recover statutory interest on income tax refunds."), <u>aff'd</u>, 742 F.3d 1378 (Fed. Cir. 2014).

In order for a tax refund case to be duly filed in a federal court pursuant to 26 U.S.C. § 7422(a), the filing must comply with the timing requirements set forth in 26 U.S.C. § 6511.  The applicable language of 26 U.S.C. § 6511 states in relevant part:

> **(a) Period of limitation on filing claim,--**Claim for credit or refund of an overpayment of any tax imposed by this title . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. . . .

> **(d)(3) Special rules relating to foreign tax credit.--**

> **(A) Special period of limitation with respect to foreign taxes paid or accrued.**--If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), <u>the period shall be 10 years from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued</u>.

26 U.S.C. § 6511(a), (d)(3)(A) (emphasis added);[11] <u>see also</u> Treas. Reg. § 301.6511(a)-1, (d)(3)(A) (2013) ("In the case of any tax. . . : If a return is filed, a claim for credit or refund of an overpayment must be filed by the taxpayer within 3 years from the time the

---

[11] As described below, the Taxpayer Relief Act of 1997 amended Section 6511 of Title 26, and the parties disagree as to which version of Section 6511 applies to Albemarle's 1997 tax year.  The previous version of 26 U.S.C. § 6511(d)(3)(A) stated:

> If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), <u>the period shall be 10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made</u>.

26 U.S.C. § 6511(d)(3)(A) (1994) (emphasis added).

return was filed or within 2 years from the time the tax was paid, whichever of such periods expires the later."). A claim for refund also "must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to appraise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402-3(a)(2) (2013); Treas. Reg. § 301.6511(d)-3 (2013) ("In the case of an overpayment of income tax resulting from a credit, allowed under the provisions of section 901 or under the provisions of any treaty to which the United States is a party, for taxes paid or accrued to a foreign country or possession of the United States, a claim for credit or refund must be filed by the taxpayer within 10 years from the last date prescribed for filing the return (determined without regard to any extension of time for filing such return) for the taxable year with respect to which the claim is made. Such 10-year period shall be applied in lieu of the 3–year period prescribed in section 6511(a).").

As generally articulated by the United States Supreme Court, albeit not in a foreign tax credit case, in Commissioner v. Lundy, 516 U.S. 235 (1996), described the requirement for taxpayers to comply with the refund claims in as follows:

A taxpayer seeking a refund of overpaid taxes ordinarily must file a timely claim for a refund with the IRS under 26 U.S.C. § 6511. That section contains two separate provisions for determining the timeliness of a refund claim. It first establishes a filing deadline: The taxpayer must file a claim for a refund "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." 26 U.S.C. § 6511(b)(1) (incorporating by reference 26 U.S.C. § 6511(a)). It also defines two "look-back" periods: If the claim is filed "within 3 years from the time the return was filed," ibid., then the taxpayer is entitled to a refund of "the portion of the tax paid within the 3 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(A) (incorporating by reference 26 U.S.C. § 6511(a)). If the claim is not filed within that 3-year period, then the taxpayer is entitled to a refund of only that "portion of the tax paid during the 2 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(B) (incorporating by reference § 6511(a)).

Comm'r v. Lundy, 516 U.S. at 239–40 (footnote omitted); see also United States v. Clintwood Elkhorn Mining Co., 553 U.S. at 8 (determining that the language of section 6511(a) clearly states that taxpayers "must comply with the Code's refund scheme before bringing suit, including the requirement to file a timely administrative claim."); Diamond v. United States, 107 Fed. Cl. 702, 706 (2012) (quoting 26 U.S.C. § 6511(a) ("Moreover, as a legal matter, the pertinent deadline for submitting a claim for refund to the IRS is either '3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later.'" (emphasis in original)), aff'd, 530 F. App'x 942 (Fed. Cir.), reh'g denied (Fed. Cir. 2013), cert. denied, 134 S. Ct. 1344 (2014); Haas v. United States, 107 Fed. Cl. 1, 5 (2012). The Supreme Court in Lundy also noted that a timely filing was a prerequisite for the Court of Federal Claims to have

jurisdiction for a refund claim.  <u>See Comm'r v. Lundy</u>, 516 U.S. at 240 ("Unlike the provisions governing refund suits in United States District Court or the United States Court of Federal Claims, which make timely filing of a refund claim a jurisdictional prerequisite to bringing suit, <u>see</u> 26 U.S.C. § 7422(a). . . ."). The Supreme Court also has determined that the equitable tolling doctrine does not apply to the time limitations of 26 U.S.C. § 6511, noting that both 26 U.S.C. § 6511 and its predecessor tax refund provisions "contained highly detailed language with clear time limits." <u>United States v. Brockamp</u>, 519 U.S. 347, 353 (1997).

In sum, Congress has provided strict statutory guidelines laying out the statute of limitations requirements for the filing of a federal tax refund claim:

> Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been "erroneously," "illegally," or "wrongfully collected," §§ 1346(a)(1), 7422(a), may not be maintained in any court.

<u>United States v. Dalm</u>, 494 U.S. at 602.

In a tax refund case, there is also a presumption of the correctness of the findings of the Commissioner of Internal Revenue.  <u>See United States v. Fior D'Italia, Inc.</u>, 536 U.S. 238, 243 (2002) ("An 'assessment' amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes. It is well established in the tax law that an assessment is entitled to a legal presumption of correctness – a presumption that can help the Government prove its case against a taxpayer in court."); <u>Conway v. United States</u>, 326 F.3d 1268, 1278 (Fed. Cir.) ("The ruling of the Commissioner of Internal Revenue enjoys a presumption of correctness and a taxpayer bears the burden of proving it to be wrong." (quoting <u>Transamerica Corp. v. United States</u>, 902 F.2d 1540, 1543 (Fed. Cir. 1990)), <u>reh'g denied</u> (Fed. Cir. 2003); <u>see also Stobie Creek Inv. LLC v. United States</u>, 608 F.3d 1366, 1381 (Fed. Cir. 2010); <u>Bubble Room, Inc. v. United States</u>, 159 F.3d 553, 561 (Fed. Cir. 1998) ("In a tax refund case, the ruling of the Commissioner of Internal Revenue is presumed correct."), <u>reh'g denied, en banc suggestion declined</u> (Fed. Cir. 1999); <u>Lima Surgical Assocs., Inc. v. United States</u>, 944 F.2d 885, 888 (Fed. Cir. 1991) ("[D]eterminations of the Commissioner of Internal Revenue are presumptively correct."); <u>Diamond v. United States</u>, 115 Fed. Cl. 516, 524 (2014) (quoting <u>Danville Plywood Corp. v. United States</u>, 899 F.2d 3, 7 (Fed. Cir. 1990) (citing <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933) ("In a tax refund suit, 'the ruling of the [IRS] Commissioner enjoys a presumption of correctness and a taxpayer bears the burden of proving it to be wrong.'") (alternation in original); <u>Deseret Mgmt. Corp. v. United States</u>, 112 Fed. Cl. 438, 447 (2013) ("In a refund suit, the assessment made by the IRS is presumed to be correct, placing an obligation on the taxpayer to come forward with evidence to rebut a presumption of correctness.").

The taxpayer has the burden of rebutting the presumption of correctness, but also "the taxpayer has the burden of establishing entitlement to the specific refund amount claimed." Bubble Room, Inc. v. United States, 159 F.3d at 561; see also United States v. Gen. Dynamics Corp., 481 U.S. 239, 245 (1987) ("The taxpayer has the burden of proving its entitlement to a deduction." (citing Helvering v. Taylor, 293 U.S. 507, 514 (1932)). Similarly the Supreme Court has endorsed the ""familiar rule" that "an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer."" Knight v. Comm'r, 552 U.S. 181, 192 (2008) (quoting INDOPCO, Inc. v. Comm'r, 503 U.S. 79, 84 (1992) (quoting Interstate Transit Lines v. Comm'r, 319 U.S. 590, 593 (1943))); see also United States v. Janis, 428 U.S. 433, 440-41 (1976) ("In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover." (citing Lewis v. Reynolds, 284 U.S. 281, modified, 284 U.S. 599 (1932)); Helvering v. Taylor, 293 U.S. at 515 ("Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid."); Welch v. Helvering, 290 U.S. 111, 115 (1933) ("The Commissioner of Internal Revenue['s] . . . ruling has the support of a presumption of correctness, and the petitioner has the burden of proving it to be wrong." (citing Wickwire v. Reinecke, 275 U.S. 101 (1927)); Charron v. United States, 200 F.3d 785, 792 (Fed. Cir. 1999) ("Since the [plaintiffs] were seeking refunds of taxes they had paid, they have the burden of proving they are entitled to the amount sought."); Danville Plywood Corp. v. United States, 899 F.2d 3, 7-8 (Fed. Cir. 1990); Barenholtz v. United States, 784 F.2d 375, 381 (Fed. Cir. 1986); Christman v. United States, 110 Fed. Cl. 1, 5 (2013) ("In refund suits, there is no doubt that the plaintiff bears the burden of proof as to his or her entitlement to a tax refund." (citing Young & Rubicam, Inc. v. United States, 187 Ct. Cl. 635, 638, 410 F.2d 1233, 1238 (1969))); Okerlund v. United States, 53 Fed. Cl. 341, 356 (2002) ("As a general rule, the burden of proof is on the taxpayer in tax refund cases." (citing Welch v. Helvering, 290 U.S. at 115)), recons. denied, 2003 WL 1547563 (Fed. Cl. Feb. 14, 2003), aff'd, 365 F.3d 1044 (Fed. Cir. 2004).

In sum, to rebut the presumption of the Commissioner's correctness, "the taxpayer must come forward with enough evidence to support a finding contrary to the Commissioner's determination." Bubble Room, Inc. v. United States, 159 F.3d at 561. Stated otherwise, to overcome the presumption, the taxpayer has the burden of presenting "substantial evidence as to the wrongfulness of the Commissioner's determination." KFOX, Inc. v. United States, 206 Ct. Cl. 143, 151-152, 510 F.2d 1365, 1369 (1975); Arrington v. United States, 34 Fed. Cl. 144, 147 (1995), aff'd, 108 F.3d 1393 (Fed. Cir. 1997). The burden imposed on a plaintiff is both the burden of going forward and the burden of persuasion. Thus, a plaintiff first must come forward with enough evidence to support a finding contrary to the Commissioner's determination. See Transamerica Corp. v. United States, 902 F.2d at 1543; Danville Plywood Corp. v. United States, 899 F.2d at 7-8; Arrington v. United States, 34 Fed. Cl. at 147. Even after satisfying the burden of going forward, a plaintiff must still carry the ultimate burden of proof. See Transamerica Corp. v. United States, 902 F.2d at 1543; Danville Plywood Corp. v. United States, 899 F.2d at 8.

Foreign Tax Credit

As indicated in its complaint, plaintiff alleges that it "is entitled to claim a foreign tax credit under 26 U.S.C. § 901 for the 1997 tax year in an amount equal to the 1997 Belgian WHT [withholding], and is therefore entitled to a refund of taxes paid for the 1997 tax year in the amount of $412,923, plus statutory interest thereon as allowed by law." Plaintiff also claims  that it "is entitled to claim a foreign tax credit under 26 U.S.C. § 901 for the 1998 tax year in an amount equal to the 1998 Belgian WHT [withholding], and is therefore entitled to a refund of taxes paid for the 1998 tax year in the amount of $412,923, plus statutory interest thereon as allowed by law."

The Tax Code, from Section 901 to Section 909, addresses foreign taxes. Section 901 of the Tax Code states in relevant part:

> **(a) Allowance of credit.**--If the taxpayer chooses to have the benefits of this subpart, the tax imposed by this chapter shall, subject to the limitation of section 904, be credited with the amounts provided in the applicable paragraph of subsection (b) plus, in the case of a corporation, the taxes deemed to have been paid under sections 902 and 960. Such choice for any taxable year may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for such taxable year. The credit shall not be allowed against any tax treated as a tax not imposed by this chapter under section 26(b).

> **(b) Amount allowed.**--Subject to the limitation of section 904, the following amounts shall be allowed as the credit under subsection (a):

>> **(1) Citizens and domestic corporations.**--In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States. . . .

26 U.S.C. § 901 (2012); see also Treas. Reg. § 1.901-1(a)(1) (2013) (A United States citizen may claim a foreign tax credit for "[t]he amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States. . . ."). Section 902(c)(4)(A) of the Tax Code indicates that "[t]he term 'foreign income taxes' means any income, war profits, or excess profits taxes paid by the foreign corporation to any foreign country or possession of the United States." 26 U.S.C. § 902(c)(4)(A) (2012).  Treasury Regulation § 1.901-2(a) offers the following:

> **(a) Definition of income, war profits, or excess profits tax--(1) In general**. Section 901 allows a credit for the amount of income, war profits or excess profits tax (referred to as "income tax" for purposes of this

section and §§ 1.901–2A and 1.903–1) paid to any foreign country. Whether a foreign levy is an income tax is determined independently for each separate foreign levy.  A foreign levy is an income tax if and only if--

> **(i)** It is a tax; and

> **(ii)** The predominant character of that tax is that of an income tax in the U.S. sense.

Treas. Reg. § 1.901-2(a) (2013).[12] As noted by a Judge of the United States Court of Federal Claims:

> Treasury Regulations and case law establish that the person on whom foreign law imposes legal liability for the foreign income tax is the person by whom the tax is considered paid, for Section 901 purposes. Treas. Reg. § 1.901-2(f)(1); Biddle v. Commissioner, 302 U.S. 573, 580-581, 58 S. Ct. 379, 82 L. Ed. 431 (1938); Norwest Corp. v. Commissioner, 69 F.3d 1404, 1407 (8th Cir. 1995).

Guardian Indus. Corp. v. United States, 65 Fed. Cl. 50, 53 (2005), aff'd, 477 F.3d 1368 (Fed. Cir. 2007).   The United States Court of Appeals for the Federal Circuit has confirmed that, "[u]nder prescribed circumstances, the Internal Revenue Code allows a 'foreign tax credit' to U.S. taxpayers." Fluor Corp. v. United States, 126 F.3d 1397, 1398 (Fed. Cir.) (quoting 26 U.S.C. § 901(a)), reh'g granted (Fed. Cir.), suggestion for reh'g en banc declined (Fed. Cir. 1997), cert. denied, 522 U.S. 1118 (1998).  The United States Supreme Court has noted that "Internal Revenue Code § 901(b)(1) states that any 'income, war profits, and excess profits taxes' paid overseas are creditable against U.S. income taxes." PPL Corp. v. Comm'r, 133 S. Ct. 1897, 1899 (2013)[13] (quoting 26 U.S.C. § 901(b)(1) (2012)); see also Fluor Corp. v. United States, 126 F.3d at 1398; Guardian Indus. Corp. v. United States, 477 F.3d at 1369 (quoting 26 U.S.C. § 901(b)(1)) ("Section 901 of the Internal Revenue Code provides for a credit for 'the

---

[12] Treasury Regulation § 1.901-2(f)(1) states, in part, "[t]he person by whom tax is considered paid for purposes of sections 901 and 903 is the person on whom foreign law imposes legal liability for such tax, even if another person (e.g., a withholding agent) remits such tax."  Treas. Reg. § 1.901-2(f)(1) (2013); see also Guardian Indus. Corp. v. United States, 477 F.3d 1368, 1370-71 (Fed. Cir. 2007).  There is no controversy in the above captioned case as to which Albemarle entity paid the tax or which entity retained the legal liability for the tax.

[13] Although the United States Supreme Court issued a decision in 2013 addressing foreign tax credits in PPL Corp. v. Commissioner, both parties agree that the holding is not relevant given the facts of the above captioned case, as PPL Corp. addressed whether a United Kingdom tax was a creditable foreign income tax.  See PPL Corp. v. Comm'r, 133 S. Ct. at 1901. In the case before this court, defendant has not contested that the Belgian withholding tax at issue was a creditable foreign income tax.

amount of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States.'").

Speaking to the relationship between the timing requirements set forth in 26 U.S.C. § 6511 and the Foreign Income Tax Credit, the United States Court of Appeals for the Sixth Circuit has indicated that: "It is undisputed that the limitations period set forth in 26 U.S.C. § 6511(d)(3)(A) applies to § 901(a)." <u>Chrysler Corp. v. Comm'r</u>, 436 F.3d 644, 652 (6th Cir. 2006). The <u>Chrysler</u> court indicated that "the ten-year statute of limitations period of § 6511(d)(3)(A) 'begins with the date prescribed by law for filing the return for the year *from which* the excess foreign taxes are carried.'" <u>Chrysler Corp. v. Comm'r</u>, 436 F.3d at 654 (quoting <u>Ampex Corp. v. United States</u>, 223 Ct. Cl. 428, 620 F.2d 853, 857 (1980)) (emphasis in <u>Chrysler</u>).

Section 903 of the Tax Code, "Credit for taxes in lieu of income, etc., taxes," states: "For purposes of this part and of sections 164(a) and 275(a), the term 'income, war profits, and excess profits taxes' shall include a tax paid in lieu of a tax on income, war profits, or excess profits otherwise generally imposed by any foreign country or by any possession of the United States." 26 U.S.C. § 903 (2012). Section 904 of the Tax Code, "Limitation on credit" states in part:

> **(a) Limitation**.--The total amount of the credit taken under section 901(a) shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year.
>
> . . .
>
> **(c) Carryback and carryover of excess tax paid**.--Any amount by which all taxes paid or accrued to foreign countries or possessions of the United States for any taxable year for which the taxpayer chooses to have the benefits of this subpart exceed the limitation under subsection (a) shall be deemed taxes paid or accrued to foreign countries or possessions of the United States in the first preceding taxable year and in any of the first 10 succeeding taxable years, in that order and to the extent not deemed taxes paid or accrued in a prior taxable year, in the amount by which the limitation under subsection (a) for such preceding or succeeding taxable year exceeds the sum of the taxes paid or accrued to foreign countries or possessions of the United States for such preceding or succeeding taxable year and the amount of the taxes for any taxable year earlier than the current taxable year which shall be deemed to have been paid or accrued in such preceding or subsequent taxable year (whether or not the taxpayer chooses to have the benefits of this subpart with respect to such earlier taxable year). Such amount deemed paid or accrued in any year may be availed of only as a tax credit and not as a deduction and only if the taxpayer for such year chooses to have the benefits of this subpart as

to taxes paid or accrued for that year to foreign countries or possessions of the United States.

26 U.S.C. § 904(a), (c) (2012).   Section 905(a) of the Tax Code states:

> **(a) Year in which credit taken**.--The credits provided in this subpart may, at the option of the taxpayer and irrespective of the method of accounting employed in keeping his books, be taken in the year in which the taxes of the foreign country or the possession of the United States accrued, subject, however, to the conditions prescribed in subsection (c). If the taxpayer elects to take such credits in the year in which the taxes of the foreign country or the possession of the United States accrued, the credits for all subsequent years shall be taken on the same basis, and no portion of any such taxes shall be allowed as a deduction in the same or any succeeding year.

26 U.S.C. § 905(a) (2012).

Subsection c of the same section, Section 905 of the Tax Code, states:

> **(c) Adjustments to accrued taxes**.--
>
> **(1) In general.**--If--
>
> **(A)** accrued taxes when paid differ from the amounts claimed as credits by the taxpayer,
>
> **(B)** accrued taxes are not paid before the date 2 years after the close of the taxable year to which such taxes relate, or
>
> **(C)** any tax paid is refunded in whole or in part, the taxpayer shall notify the Secretary, who shall redetermine the amount of the tax for the year or years affected. The Secretary may prescribe adjustments to the pools of post-1986 foreign income taxes and the pools of post-1986 undistributed earnings under sections 902 and 960 in lieu of the redetermination under the preceding sentence.
>
> **(2) Special rule for taxes not paid within 2 years.--**
>
> **(A) In general**.--Except as provided in subparagraph (B), in making the redetermination under paragraph (1), no credit shall be allowed for accrued taxes not paid before the date referred to in subparagraph (B) of paragraph (1).
>
> **(B) Taxes subsequently paid**.--Any such taxes if subsequently paid--

**(i)** shall be taken into account--

**(I)** in the case of taxes deemed paid under section 902 or section 960, for the taxable year in which paid (and no redetermination shall be made under this section by reason of such payment), and

**(II)** in any other case, for the taxable year to which such taxes relate, and

**(ii)** shall be translated as provided in section 986(a)(2)(A).

26 U.S.C. § 905(c).

The United States Supreme Court, when examining 26 U.S.C. § 902, has indicated that the legislative history for the foreign tax credit "clearly demonstrates that the credit was intended to protect a domestic parent from double taxation of its income." United States v. Goodyear Tire and Rubber Co., 493 U.S. 132, 139 (1989) (in the context of the indirect tax credit, 26 U.S.C. § 902), reh'g denied, 493 U.S. 1095 (1990); see also Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue and Fin., 505 U.S. 71, 73 (1992) ("[T]he foreign tax credit is intended to mitigate multiple taxation of corporate earnings." (footnote omitted)); Bankers Trust New York Corp. v. United States, 225 F.3d 1368, 1369 (Fed. Cir.) ("The FTC [foreign tax credit] provides U.S. taxpayers with tax credits for taxes paid to foreign governments, with the purpose of avoiding double taxation of the income.") (footnote omitted), reh'g and reh'g en banc denied (Fed. Cir. 2000).

As noted by a Judge of the United States Court of Federal Claims:

The United States taxes the income of its citizens, residents, and domestic entities on a worldwide basis- i.e., regardless of whether the income is earned domestically or internationally. Thus, a domestic corporation must include foreign source income on its U.S. tax returns even though that income may also have been subject to foreign taxation. Since 1918, however, the United States has allowed domestic taxpayers in this circumstance to claim a dollar-for-dollar credit in the U.S. for income taxes they have paid in a foreign country.

Salem Fin., Inc. v. United States, 112 Fed. Cl. 543, 582 (2013), recons. denied, 2014 WL 47541 (Fed. Cl. Jan. 7, 2014); see also R.H. Donnelley Corp. v. United States, 641 F.3d 70, 75 (4th Cir. 2011).  The Salem court also noted that "the purpose of the foreign tax credit is to allow taxpayers to avoid double taxation on foreign income, and thus to 'neutralize the effect of U.S. tax on the business decision of where to conduct business

activities most productively.'"  Salem Fin., Inc. v. United States, 112 Fed. Cl. at 582 (quoting Bank of New York Mellon Corp. v. Comm'r, 140 T.C. 15, 46 (2013)).[14]

The language in the Salem decision mirrors the language of the legislative history to the Tax Reform Act of 1976, Public Law 94-445, which states in part:

> This foreign tax credit system embodies the principle that the country in which a business activity is conducted (on in which any income is earned) has the first right to tax that income arising from activities in that country, even though the activities are conducted by corporations or individuals resident in other countries. Under this principle, the home country of the individual or corporation has a residual right to tax income arising from these activities, but recognizes the obligation to insure that double taxation

_____

[14] At issue in Salem was whether a complex financial transaction that generated large-scale foreign tax credits for a United States taxpayer which could be used to enhance revenue and reduce taxes in the United States had economic substance.  See Salem Fin., Inc. v. United States, 112 Fed. Cl. at 548. The parties agree that the Salem decision does not apply to whether Albemarle's foreign tax credit deductions were timely. Regarding economic substance plaintiff states: "The government has never challenged the economic substance of the transaction that gave rise to the contested Belgian taxes. The Internal Revenue Service has already granted Albemarle's claims for foreign tax credits for the portion of the Belgian withholding tax paid that related to years after 1997 and 1998. Economic substance simply is not an issue here." (internal citation omitted). Even if it was an issue, plaintiff argues it could not be resolved in the context of the government's motion to dismiss, because "[t]he economic substance inquiry is inherently factual. Such an issue cannot be resolved in the context of this motion to dismiss for lack of jurisdiction because the court must draw all reasonable factual inferences in favor of Albemarle as the non-moving party." Defendant agrees that an economic substance analysis is not required in the above captioned case, albeit stating its conclusion differently: "[t]he economic substance doctrine relates to whether a taxpayer is entitled to receive the benefit of tax credits resulting from a particular transaction, not whether the taxpayer's claim seeking those credits was timely filed. If the claim seeking a foreign tax credit was not timely filed, the Court's inquiry is ended, regardless of whether the underlying transaction was a sham." Defendant argues that the economic substance doctrine is relevant only "to determine the merits of a timely filed claim that otherwise meets the technical requirements of the foreign tax credit." Moreover, defendant states:

> Whether the underlying transaction that gave rise to the Belgian tax in issue had economic substance is not relevant to determining the year in which foreign taxes are treated as accrued.[ ] The same is true with regard to the question of whether a that [sic] Belgian tax is a creditable income tax for purposes of the foreign tax credit.

The court likewise agrees that the holding of Salem Financial, Inc. v. United States, and the issue of economic substance, does not impact the above captioned case.

does not result.  Some countries avoid double taxation by exempting foreign source income from tax altogether.  For U.S. taxpayers, however, the foreign tax credit system, providing a dollar-for-dollar credit against U.S. tax liability for income taxes paid to a foreign country is the mechanism by which double taxation is avoided.

Senate Report No. 94-938, Part I, Tax Reform Act of 1976, P.L. 94-445, § 1031(a).

The United States does not allege that plaintiff may not claim the foreign tax credits at issue, only that plaintiff claimed the foreign tax credits for 1997 and 1998 outside the allowed statute of limitations period.  Indeed, defendant has conceded that "[i]n this case it is not disputed that the Belgian withholding tax which is the subject of the claims at issue were creditable foreign income taxes."  Likewise, plaintiff indicates that "[i]n the instant case, there is no dispute that the Belgian tax at issue qualifies as a creditable tax under section 901."

<u>All Events Test</u>

The parties agree that "accrual of foreign taxes for purposes of the foreign tax credit is based on the all events test. . . ."  The parties also agree that the all events test governs the accrual of the contested Belgian taxes for federal income tax purposes and the parties further agree that Treasury Regulation § 1.461-4(g)(6)(iii)(B) (2013), "expressly provide that the 'all events' test governs the accrual of foreign taxes."  Treasury Regulation § 1.461-4(g))(6)(iii)(B),  "Certain foreign taxes," provides:

If the liability of a taxpayer is to pay an income, war profits, or excess profits tax that is imposed by the authority of any foreign country or possession of the United States and is creditable under section 901 (including a creditable tax described in section 903 that is paid in lieu of such a tax), economic performance occurs when the requirements of the all events test (as described in § 1.446–1(c)(1)(ii)) other than economic performance are met, whether or not the taxpayer elects to credit such taxes under section 901(a).

Treas. Reg. § 1.461-4(g))(6)(iii)(B).  The Tax Code at 26 U.S.C. § 461(a) (2012), which is the provision Treasury Regulation § 1.461-4 implements, states: "The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income."  26 U.S.C. § 461(a).  As noted above, Albemarle indicated it was an accrual method taxpayer for the relevant tax years. For those employing the accrual method of accounting, the Tax Code permits the deduction of an expense in the year in which it is "incurred," regardless of when the expense is actually paid.  <u>See</u> 26 U.S.C. § 162(a) (2012) ("There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. . . ."); <u>see also</u> <u>Avon Prods., Inc. v. United States</u>, 97 F.3d 1435, 1438 (Fed. Cir. 1996).  Treasury Regulation § 1.461-1(a)(2)(i) states under the accrual method "a liability (as defined in

[Treas. Reg.] § 1.446-1(c)(1)(ii)(B))[15] is incurred, and generally is taken into account for Federal income tax purposes, in the taxable year in which all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability." Treas. Reg. § 1.461-1(a)(2)(i).

In United States v. General Dynamics Corp., the United States Supreme Court indicated, "[a]s we noted in United States v. Hughes Properties, Inc., 476 U.S. 593, 600, 106 S. Ct. 2092, 2096, 90 L. Ed. 2d 569 (1986), whether a business expense has been 'incurred' so as to entitle an accrual-basis taxpayer to deduct it under § 162(a) of the Internal Revenue Code, 26 U.S.C. § 162(a), is governed by the 'all events' test that originated in United States v. Anderson, 269 U.S. 422, 441, 46 S. Ct. 131, 134, 70 L. Ed. 347 (1926)." United States v. Gen. Dynamics Corp., 481 U.S. at 242; see also United States v. Hughes Props., Inc., 476 U.S. 593, 600 (1986). In Anderson, the Supreme Court stated, "a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it." United States v. Anderson, 269 U.S. 422, 441 (1926); see also Amergen Energy Co., LLC v. United States, 113 Fed. Cl. 52, 60-61 (2013). Subsequently, the Supreme Court described the all events test as "a fundamental principle of tax accounting" and "the 'touchstone' for determining the year in which an item of deduction accrues. . . ." United States v. Consol. Edison Co., 366 U.S. 380, 385, reh'g denied 368 U.S. 884 (1961); see also United States v. Hughes Props., Inc., 476 U.S. at 600. In United States v. General Dynamics Corp., the Supreme Court also noted in a footnote,

> The "all events" test has been incorporated into the Internal Revenue Code by the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 598, 607, 26 U.S.C. § 461(h)(4) (1982 ed., Supp. III). Section 461(h) imposed limits on the application of the test, providing that "in determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs." § 461(h)(1).

United States v. Gen. Dynamics Corp., 481 U.S. at 243 n.3; Amergen Energy Co., LLC v. United States, 113 Fed. Cl. at 61 ("As the United States Supreme Court noted in General Dynamics, since 1984 the 'economic performance' requirement, the third prong of the modern three-prong all events test, altered the application of the two-prong all events test that had existed up until that time." (citing United States v. Gen. Dynamics Corp., 481 U.S. at 243 n.3)); see also Metro Leasing and Dev. Corp. v. Comm'r, 376 F.3d 1015, 1023 (9th Cir. 2004) ("In 1984 this 'all events test' was engrafted into the Internal Revenue Code. In general, therefore, an accrual basis taxpayer may not deduct an expense until (1) all events have occurred that determine the fact of liability; (2) the amount of the liability can be determined with reasonable accuracy; and (3)

---

[15] Treasury Regulation § 1.446-1(c)(1)(ii)(B) states in part, "[t]he term 'liability' includes any item allowable as a deduction, cost, or expense for Federal income tax purposes." Treas. Reg. § 1.446-1(c)(1)(ii)(B) (2013).

economic performance or payment has occurred." (citing 26 U.S.C. § 461(h) and Treas. Reg. § 1.461-1(a)(2)).

The Tax Code at 26 U.S.C. § 461(h)(4), defines the requirements of the all events test by stating, "[f]or purposes of this subsection, the all events test is met with respect to any item if all events have occurred which determine the fact of liability and the amount of such liability can be determined with reasonable accuracy." 26 U.S.C. § 461(h)(4).  According to the United States Court of Appeals for the Federal Circuit, "[a]s that test [the all events test] would have it, a liability can only be included in basis 'for the taxable year in which all the events have occurred which determine the fact of liability and the amount thereof can be determined with reasonable accuracy.'" Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 974 (Fed. Cir. 2009) (quoting La Rue v. Comm'r, 90 T.C. 465, 478 (1988) (discussing the "all events test" in the context of a partnership and 26 U.S.C. § 752 (2012)).  Likewise, the United States Court of Claims noted,

> [i]f all events which determine liability and fix the amount of the tax occur before the end of the prior year, a deduction is available to an accrual basis taxpayer. . . . The "all events" test has been applied frequently and regularly in this court and other jurisdictions to determine proper timing for tax expense deductions.

Eastman Kodak Co. v. United States, 209 Ct. Cl. 365, 371, 534 F.2d 252, 256 (1976).

In Coltec Industries, Inc. v. United States, 454 F.3d 1340 (Fed. Cir.), reh'g denied (Fed. Cir. 2006), cert. denied, 549 U.S. 1206 (2007), the United States Court of Appeals for the Federal Circuit indicated that a liability is incurred in the taxable year in which all events have occurred to establish the fact of the liability.  See id. at 1347 (citing Treas. Reg. § 1.461-1(a)(2)(i)); see also Interex, Inc. v. Comm'r, 321 F.3d 55, 58 (1st Cir. 2003) ("Accrual method taxpayers may deduct expenses when they are incurred even if they have not yet been paid, as long as three factors are met: 1) all of the events that establish the fact of the liability must have occurred; 2) the amount must be able to be determined 'with reasonable accuracy;' and 3) economic performance must have occurred."); Chernin v. United States, 149 F.3d 805, 808-09 (8th Cir. 1998) (citing Treas. Reg. § 1.461-1(a)(2)) ("In general, an accrual basis taxpayer may not deduct an expense until (1) all events have occurred that determine the fact of liability; (2) the amount thereof can be determined with reasonable accuracy; and (3) economic performance has occurred with respect to the expense.").  The United States Court of Appeals for the Ninth Circuit in Metro Leasing also noted that "[u]nder the third factor of the test, the time when economic performance of a tax liability has occurred is when the 'tax is paid to the governmental authority that imposed the tax.'" Metro Leasing and Dev. Corp. v. Comm'r, 376 F.3d at 1023 (quoting Treas. Reg. § 1.461-4(g)(6)).

As explained by a Judge of this court:

> The modern three-prong all events test is found in two distinct portions of § 461(h). The first two prongs of the three-prong all events test, which carry forth the basic principles of the traditional two-prong all events test, are stated in § 461(h)(4):
>
> > *All events test* For purposes of this subsection, the all events test is met with respect to any item if all events have occurred which determine the fact of liability and the amount of such liability can be determined with reasonable accuracy.
>
> 26 U.S.C. § 461(h)(4). The third prong of the three-prong all events test is found in § 461(h)(1):
>
> > *In general* For purposes of this title, in determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs.
>
> 26 U.S.C. § 461(h)(1). The title of subsection (h) is "Certain liabilities not incurred before economic performance," and the title of IRC § 461 is "General rule for taxable year of deduction."

Amergen Energy Co., LLC v. United States, 113 Fed. Cl. at 61 (emphasis in original).

As noted above, regarding foreign taxes, Treasury Regulation § 1.461-4, governing economic performance states:

> If the liability of a taxpayer is to pay an income, war profits, or excess profits tax that is imposed by the authority of any foreign country or possession of the United States and is creditable under section 901 (including a creditable tax described in section 903 that is paid in lieu of such a tax), economic performance occurs when the requirements of the all events test (as described in § 1.446-1(c)(1)(ii)) other than economic performance are met, whether or not the taxpayer elects to credit such taxes under section 901(a).

Treas. Reg. § 1.461-4(g)(6)(iii)(B). Therefore, relevant to the above captioned case, economic performance is deemed to have occurred under the all events test when all the other elements of the all events test have been met. See id.

Regarding the first element of the all events, the fact of liability,[16] the Supreme Court has indicated that "[i]t is fundamental to the 'all events' test that, although expenses may be deductible before they have become due and payable, liability must first be firmly established." United States v. Gen. Dynamics Corp., 481 U.S. at 243.  The United States Supreme Court in United States v. Hughes Properties, Inc., noted that "the Court's cases have emphasized that 'a liability does not accrue as long as it remains contingent.'"  United States v. Hughes Props., Inc., 476 U.S. at 600 (quoting Brown v. Helvering, 291 U.S. 193, 200 (1934)); see also Dixie Pine Prods. Co. v.

---

[16] The court notes that many of the cases, including the Supreme Court precedent, cited for the elements of the fact of the liability and the liability determined with reasonable accuracy, precede the addition of the economic performance element of the all events test by the Deficit Reduction Act of 1984 and codification of the all events test at 26 U.S.C. § 461(h). United States Courts of Appeal have cited to the same earlier precedent with approval.  For example, the United States Court of Appeals for the Federal Circuit in Manus Energy Corp. v. United States considered the plaintiff's deductions in tax years 1984 and 1985.  Prior to considering the economic performance element of 26 U.S.C. § 461(h), the court noted "[u]nder the 'all events' test, the taxpayer cannot deduct an expense until all the events have occurred that fix the amount and fact of the underlying liability," and cited the earlier United States Supreme Court cases of United States v. Consolidated Edison Company, 366 U.S. 380, 385 and United States v. Anderson, 269 U.S. at 441, both decided prior to the codification of the "all events test" and the addition of the economic performance element.  See Manus Energy Corp. v. United States, 31 F.3d 1135, 1142 (Fed. Cir. 1994).  Likewise, in 2006, the United States Court of Appeals for the Sixth Circuit examined whether the taxpayer had established liability with sufficient certainty to satisfy the first element of the "all events test," and considered the Supreme Court precedent of United States v. Hughes Properties, Inc. and United States v. General Dynamics Corp. noting that, even though the economic performance was not yet a part of the all events test.  See Chrysler Corp. v. United States, 436 F.3d at 650-51; see also Gold Coast Hotel & Casino v. United States, 158 F.3d 484, 488 (9th Cir. 1998) (same); Metro Leasing and Dev. Corp. v. Comm'r, 376 F.3d at 1022-23 (citing United States v. Hughes Properties, Inc. and United States v. Anderson) (same); Valero Energy Corp. v. Comm'r, 78 F.3d 909, 915 (5th Cir. 1996) (same).

The legislative history to the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 758 (1984), indicates that the addition of the economic performance to the all events test was to complement the existing two prongs of the "all events test," and did not call into question the precedential value of cases determining either the fact of liability or if the liability could be determined with reasonable accuracy.  See H.R. Rep. 98-432, pt. 2, at 1252-56 (1984); Staff of the Joint Comm. on Taxation, 98th Cong., General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 258-62 (Comm. Print 1984).  As the House Report No. 98-432(II) indicated, "[t]he Committee believes that the rules relating to the time for accrual of a deduction by a taxpayer using the accrual method of accounting should be changed to take into account the time value of money." H.R. Rep. 98-432, pt. 2, at 1254.

Comm'r, 320 U.S. 516 (1944); Lucas v. Am. Code Co., 280 U.S. 445, 452 (1930). The United States Supreme Court in Hughes Properties also noted:

> Thus, to satisfy the all-events test, a liability must be "final and definite in amount," Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 287, 64 S. Ct. 596, 599, 88 L. Ed. 725 (1944), must be "fixed and absolute," Brown v. Helvering, 291 U.S. [193,] 201, 54 S. Ct. [356,] 360, [L. Ed. 725 (1934)], and must be "unconditional," Lucas v. North Texas Lumber Co., 281 U.S. 11, 13, 50 S. Ct. 184, 185, 74 L. Ed. 668 (1930). And one may say that "the tax law requires that a deduction be deferred until 'all the events' have occurred that will make it fixed and certain." Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 543, 99 S. Ct. 773, 786, 58 L. Ed. 2d 785 (1979).

United States v. Hughes Props., Inc., 476 U.S. at 600-01. The Supreme Court also has stated, "[n]or may a taxpayer deduct an estimate of an anticipated expense, no matter how statistically certain, if it is based on events that have not occurred by the close of the taxable year." United States v. Gen. Dynamics Corp., 481 U.S. at 243-44. Moreover, the Supreme Court has indicated if a taxpayer contests the liability, the all events test cannot be met, as the liability remains contingent. See Dixie Pine Products Co. v. United States, 320 U.S. at 519; see also United States v. Consol. Edison Co., 366 U.S. at 385; Security Flour Mills Co. v. Comm'r, 321 U.S. 281, 284 (1944).

This court, however, does not need to undertake a full analysis of the all events test at this time. As noted by the plaintiff, "[t]he parties' filings reflect complete agreement that the sole issue in this case is whether Albemarle's refund claims for tax years 1997 and 1998 were timely submitted to the Internal Revenue Service." Furthermore, defendant states that "[f]or purposes of defendant's motion, it is not disputed that the all events test was met when the plaintiff's protest of the Belgian tax in issue was resolved," and that "[p]laintiff correctly notes that, under the all events test, a contested tax accrues when the contest is resolved and the fact and amount of the liability can be determined with reasonable certainty," i.e., the first two elements of the all events test.

Moreover, regarding economic performance, the third element of the all events test, as noted above, there is an exception for economic performance for foreign taxes. Treasury Regulation § 1.461-4 states regarding foreign taxes:

> If the liability of a taxpayer is to pay an income, war profits, or excess profits tax that is imposed by the authority of any foreign country or possession of the United States and is creditable under section 901 (including a creditable tax described in section 903 that is paid in lieu of such a tax), economic performance occurs when the requirements of the all events test (as described in § 1.446-1(c)(1)(ii)) other than economic performance are met, whether or not the taxpayer elects to credit such taxes under section 901(a).

Treas. Reg. § 1.461-4(g)(6)(iii)(B).

The parties agree that the all events test was met in 2002.  Plaintiff argues it is "clear that the Belgian withholding taxes relating to 1997 and 1998 could not and did not *actually* accrue until 2002." (emphasis in original). Plaintiff claims that "under the plain language of section 6511(d)(3)(A), the 10-year statute of limitations began to run on March 15, 2003 – i.e., the due date for Albemarle's 2002 U.S. tax return.   Since Albemarle filed its refund claims on May 15, 2009, well before the expiration of the 10-year limitations period, the claims were timely with respect to both 1997 and 1998." Defendant agrees that "[t]he all-events test was met in 2002, the year the contest regarding those additional Belgian taxes was resolved."  (footnote omitted).  Defendant, however, continues:

> While the Belgian tax liability accrued in 2002 when the all-events test was met, pursuant to the relation back doctrine in *Cuba Railroad* [*Co. v. United States,* 124 F. Supp. 182 (S.D.N.Y. 1954)], and the redetermination rules in § 905(c), that accrual relates back to the years to which the foreign taxes relate, 1997 and 1998.   Those are the only years in which the foreign tax credit can be claimed with regard to the contested Belgian taxes at issue here.

Therefore, the critical issue in the case currently before the court is whether, as defendant contends, accrual of plaintiff's claims occurred in 1997 and 1998, based on the relation back doctrine, making the claims before the IRS untimely, or in 2002, as plaintiff argues, which would make the claims timely and give this court jurisdiction to review plaintiff's claims.

<u>The Contested Tax and Relation Back Doctrine</u>

In the instant case, 1997 and 1998 are the only tax years which are at issue regarding whether a foreign tax credit can be claimed by plaintiff for the Belgian taxes paid.  As stated by the government, "[d]efendant is not conceding that plaintiff's contest of the Belgian tax in question was a bona fide dispute. If defendant's motion is denied, additional discovery will be required on that issue. However, solely for purposes of this motion to dismiss, defendant is not placing in issue at this time the contention in the complaint that plaintiff contested the additional tax proposed by the Belgian government in 2001, which was paid in 2002." As indicated above, if a taxpayer contests the liability, the all events test cannot be met, as the amount and fact of liability remains contingent. <u>See</u> <u>Dixie Pine Products Co. v. United States</u>, 320 U.S. at 519.  In <u>Dixie Pine</u>, a 1944 case, the United States Supreme Court concluded that:

> It has long been held that, in order truly to reflect the income of a given year, all the events must occur in that year which fix the amount and the fact of the taxpayer's liability for items of indebtedness deducted though not paid; and this cannot be the case where the liability is contingent and

is contested by the taxpayer. Here the taxpayer was strenuously contesting liability in the courts and, at the same time, deducting the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability. This it could not do. It must, in the circumstances, await the event of the state court litigation and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated.

Id. at 519 (footnotes omitted); see also United States v. Consol. Edison Co., 366 U.S. at 385 n.6 (quoting Dixie Pine Products Co. v. United States, 320 U.S. at 519).

Plaintiff claims that "[t]he Supreme Court decision in *Dixie Pine Products Co. v. Commissioner*, 320 U.S. 516 (1944), illustrates the proper application of the 'all events' test to a contested tax. In Albemarle's view, that case is directly controlling here." Defendant, on the other hand, argues that the Dixie Pine decision "did not address the proper timing of the accrual of a foreign tax credit related to a contested foreign tax, or the application of the statute of limitations in § 6511." Defendant also argues that, "[c]ourts that have examined the application to the foreign tax credit of the contested tax doctrine set forth in *Dixie Pine* have uniformly held that while that doctrine governs the determination of when the all-events test is met, it does not apply to determine the proper year in which the credit can be claimed, because of the special purpose of the foreign tax credit to prevent double taxation of the same foreign source income."

In contrast to Dixie Pine, defendant cites to the 1954 decision in Cuba Railroad Co. v. United States, 124 F. Supp. 182 (S.D.N.Y. 1954), in which the taxpayer contested the Cuban government's determination that it owed further taxes for the tax year 1943. The dispute with the Cuban government was not resolved until 1950, at which time the taxpayer paid additional taxes. In the interim, the taxpayer sought to claim the foreign tax credit on its 1945 tax return, which was disallowed by the IRS. See Cuba R.R. Co. v. United States, 124 F. Supp. at 184. The Cuba Railroad decision is very brief, only two pages long, and the majority of the opinion addresses the government's contention that the suit is barred because plaintiff signed a Treasury Department Form 870-TS which was titled: "Offer of Waiver of Restrictions on Assessments and Collection of Deficiency in Tax." Id. at 183. The court determined that "[t]he execution of Form 870–TS by the taxpayer, and its acceptance by the head of a division does not, per se, preclude the taxpayer's right to seek a refund in this court." Id. at 185.

After addressing the Form 870–TS argument, the Cuba Railroad court turned to the defendant's argument regarding the contested tax doctrine, and addressed the precursor statute to 28 U.S.C. § 905, 26 U.S.C. § 131. Regarding the contested tax doctrine, the Cuba Railroad court stated, in full:

Turning now to the second ground urged by the defendant, we find the argument that the amount of the Cuban tax deficiency having been contested, the amount actually paid on settlement of the claim should not

be considered as a credit for the year in which it accrued, but rather should only be asserted for the year in which it was paid. This theory is known as the 'contested tax' doctrine, and we do not believe that it should apply to this case.

Section 131 of the Internal Revenue Code, 26 U.S.C.A. § 131, under the heading of 'Supplement C—Credits against Tax' is entitled 'Taxes of foreign countries and possessions of United States'. The plaintiff brings its claim under section 131(c) entitled 'Adjustments on payment of accrued taxes'. This subsection (c) is modified by the next subsection, (d), entitled 'Year in which credit taken', which includes the following language:

'The credits provided for in this section may . . . be taken in the year in which the taxes of the foreign country . . . accrued . . . .'

That language is clear and unambiguous. Further, it is supported by case law. Russell-Miller Milling Co. v. Helvering, 63 App. D.C. 74, 69 F.2d 392; Hygienic Products Co. v. Com'r, 6 Cir., 111 F.2d 330, certiorari denied 311 U.S. 665, 61 S.Ct. 22, 85 L.Ed. 426; Hecla Mining Co. v. Com'r, 35 B.T.A. 454.

We therefore conclude that this defense too must fail.

Cuba R.R. Co. v. United States, 124 F. Supp. at 185 (alterations in original).  The Cuba Railroad court did not expand on its theory of the contested tax doctrine, or explain why it did not apply to foreign tax credits.  The court agrees with plaintiff Albemarle that "[t]he cryptic opinion in *Cuba Railroad* introduced a measure of uncertainty as to how the 'all events' test and *Dixie Pine* would apply in the context of foreign tax credits attributable to contested taxes."

Plaintiff also argues that "[t]he continuing vitality of the first *Dixie Pine* principle is also made clear by the IRS rulings[17] that discuss the relation back rule." For support, plaintiff cites to Revenue Ruling 58-55, issued four years after the decision in Cuba Railroad, and argues:

---

[17] The court notes that the Federal Circuit has not fully addressed if Revenue Rulings are binding on this court and the United States Court of Appeals for the Federal Circuit. See Am. Mut. Life Ins. Co. v. United States, 267 F.3d 1344, 1352 n.3 (Fed. Cir. 2001) ("We leave for another day the issue of whether IRS revenue rulings are binding on this court. . . ."). But see B.F. Goodrich Co. v. United States, 94 F.3d 1545, 1550 n.5 (Fed. Cir. 1996) ("We recognize, however, that IRS Revenue Rulings have no binding effect on this court."); 26 U.S.C. § 6110(k)(3) (2012) ("Unless the Secretary otherwise establishes by regulations, a written determination may not be used or cited as precedent.").

> Rev. Rul. 58-55 clarified the proper application of the *Cuba Railroad* decision by drawing a clear distinction between the two principles articulated in *Dixie Pine*. The ruling made clear that the year **in which** a contested tax accrues must be determined under the "all events" test. The ruling expressly states that the accrual of a contested tax "must conform" to the rules of section 461 (i.e., the "all events" test), irrespective of the year to which the tax relates. That is unquestionably the first *Dixie Pine* principle.

(emphasis in original). Defendant notes, however, "Dixie Pine involved the proper timing of the accrual of a deduction of a contested state tax liability under the Revenue Act of 1936. The Supreme Court did not address the proper timing of the accrual of a foreign tax credit related to a contested foreign tax, or the application of the statute of limitations in § 6511." Therefore, describing the relationship between the two cases, the defendant indicates, "under the relation back doctrine set out in Cuba Railroad, in the case of contested foreign taxes, while the all-events test is met when the contest is resolved, in accordance with Dixie Pine, the year in which the foreign taxes accrued for purposes of § 905(a) is the year to which those foreign taxes relate, not the year in which the contest regarding those taxes is resolved."

In Reading & Bates Corporation v. United States, 40 Fed. Cl. 737 (1994),[18] a Judge of this court explained:

> The accrual of a foreign tax credit is governed by the all events test. If the foreign tax is uncontested, the tax credit applies to the year in which the foreign tax was levied. If, however, the taxpayer contests the foreign tax assessment, the taxpayer must accrue the foreign tax liability as a credit against the United States tax in the year in which the liability has been finally determined. *See Cuba Railroad Co. v. United States*, 124 F. Supp. 182 (S.D.N.Y. 1954). Once the liability becomes fixed, after the dispute has been resolved, the accrued foreign tax liability "relates back" to the year in which it was levied. Rev. Rul. 58-55, 1958-1 C.B. 266; *see United States v. Campbell*, 351 F.2d 336, 338 (2d Cir. 1965).

Reading & Bates Corp. v. United States, 40 Fed. Cl. at 752–53. The United States v. Campbell case, a 1965 decision by the Second Circuit, was cited with approval in Reading & Bates, and likewise supports the conclusion in Cuba Railroad, indicating:

> Section 905(a) of the Code determines when the credit may be taken and allows the taxpayer an election between the cash or accrual method of re-porting. The United States credit for an uncontested foreign tax of course applies to the year in which the foreign tax was levied. In the event the

---

[18] The court acknowledges that the facts of Reading & Bates are very different from the facts in the present case, as the Reading & Bates court described the overthrow of the Shah of Iran and the occupation of the American Embassy.  See generally Reading & Bates Corp. v. United States, 40 Fed. Cl. 737.

foreign tax is contested by the taxpayer, the Internal Revenue Service has followed <u>Cuba R.R. v. United States</u>, 124 F. Supp. 182 (S.D.N.Y. 1954), which requires a tax-payer on an accrual basis to accrue a foreign tax liability as a credit against United States tax in the year in which this liability has been finally determined. However, this accrual has been allowed to 'relate back' to the year in which the foreign tax was levied. Rev. Rul. 58-55, 1958-1 Cum.Bull. 266. Thus, if the taxpayer contests his liability for a foreign tax imposed on income in 1960, and this liability is finally adjudicated in the foreign country in 1965, 'the credit may not be claimed until 1965 . . ., (but) the foreign tax imposed on 1960 income will be offset against the United States 1960 tax just as if it had accrued in 1960.' Owens, The foreign tax credit 5/3B2, at 328 (1961).

<u>United States v. Campbell</u>, 351 F.2d 336, 338 (2d Cir. 1965), <u>cert. denied</u>, 383 U.S. 907 (1966).  Although not binding on this court, the relation back approach for foreign taxes as articulated in <u>Cuba Railroad</u>, although not fully explained, seems generally to be appropriate for application to the above captioned case, rather than solely relying on the <u>Dixie Pine</u> principle, as plaintiff suggests.

<u>Plaintiff's 1998 Tax Year</u>

As indicated above, for the purposes of the defendant's motion to dismiss, the facts are not in dispute. A Belgian subsidiary of Albemarle, Albemarle S.A., did not pay any Belgian withholding tax with regard to the interest payments on previously issued debentures prior to October 22, 2001, as Albemarle S.A. believed that the interest payments made on the debentures were exempt from Belgian withholding tax and therefore did not make any payments in the 1998 tax year. Plaintiff filed its United States 1998 tax return on September 15, 1999.

On October 22, 2001, the Belgian tax authorities issued a notice of adjustment to Albemarle S.A. for the tax years 1996 through 1998. The notice of adjustment provided that debenture interest payments made by Albemarle S.A. during 1997 and 1998 were subject to Belgian withholding tax at the statutory rate of 25%. On December 3, 2001, Albemarle S.A. protested the notice of adjustment, and subsequently,  on January 31, 2002, Albemarle S.A. and the Belgian tax authorities reached an agreement pursuant to which Albemarle S.A. would pay the Belgian withholding taxes at a tax rate of 15% on the debenture interest payments it made in 1997-2001. After the settlement agreement was finalized, Albemarle S.A. made full payment, in two installments, to the Belgian tax authorities in the amount of $1,416,740.00 in 2002. On May 15, 2009, seven years after the Belgian withholding taxes were paid by Albemarle S.A., plaintiff filed with the United States IRS "an administrative refund claim in the form of an amended consolidated federal income tax return (Form 1120-X) for the 2002 tax year." Although both the settlement agreement with the Belgian tax authorities was finalized, and the taxes were paid, in 2002, plaintiff did not file protective refund claims for the 1997 or 1998 tax years. The amended tax return sought a refund in the amount of $961,841.00, plus interest, reflecting a claim for $1,416,740.00 in foreign tax credits attributable to the

Belgian withholding taxes paid pursuant to the settlement agreement with the Belgian tax authorities for plaintiff's 1997, 1998, 1999, 2000, and 2001 tax years.[19] Based on the Belgian withholding tax plaintiff paid in 2002, plaintiff claimed entitlement to a foreign tax credit in its amended tax return for the 1998 tax year in the amount of $412,923.00.

The parties agree that the plaintiff was entitled to take a foreign tax credit for the 1998 tax year as a result of the withholding tax paid, and the parties agree that the foreign tax was ultimately paid in 2002.  The difference between the parties is whether the Belgian tax accrued once in 1998 in order to trigger the plaintiff's ability to claim the foreign tax credit, and then actually accrued in 2002 when the contested liability was resolved and paid, as articulated by plaintiff, or if the claims for the foreign tax credit, although resolved and paid to the foreign government in 2002, relate back to the tax year for which plaintiff claimed the refund, i.e., 1998, as defendant suggests.

Regarding the 1998 tax year, defendant claims that plaintiff's 1998 tax refund claim was not filed within the ten year jurisdictional timeframe of 26 U.S.C. § 6511(d)(3)(A) applicable to foreign tax credits. For the 1998 tax year, defendant acknowledges that the Taxpayer Relief Act of 1997, which amended the language of  26 U.S.C. § 6511(d)(3)(A), applies, noting that because "plaintiff's 1998 tax year began on January 1, 1998, the provisions of § 6511(d)(3)(A) as amended apply." Plaintiff also states that "[t]he timeliness of Albemarle's refund claims is therefore properly governed by the amended version of section 6511(d)(3)(A)." The amended (and current) version of 26 U.S.C. § 6511(d)(3)(A) states:

> If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued.

26 U.S.C. § 6511(d)(3)(A). Plaintiff, citing 26 U.S.C. § 6511(d)(3)(A), stresses the importance of the modification to the language included in the amended version, specifically the phrase "in which such taxes were actually paid or accrued." Plaintiff emphasizes that the "the plain meaning of section 6511(d)(3)(A) is clear.  The year 'in which' the contested Belgian taxes 'actually accrued' is the year when the 'all events' test was satisfied, which was 2002 when the contest ended. In other words, 'actually accrued' means the year in which the taxes accrued in fact. It does not mean an earlier year for which the taxes are *considered to have accrued* pursuant to a legal fiction (i.e., the relation back rule)." (emphasis in original).

---

[19] As indicated above, after filing the Form 1120-X, plaintiff and the IRS agreed that the 2002 income tax return constituted claims for plaintiff's 1997, 1998, 1999, 2000, and 2001 tax years.

Defendant takes issue with plaintiff's conclusion that the amended version of the statute is clear.  Moreover, defendant argues that even if the statute is clear, a break from the typical rules of statutory construction is warranted and "resort to the legislative history is appropriate to determine whether Congress intended the bizarre result of the same foreign tax liability accruing on two different dates, with two different limitation periods, and two different periods for purposes of changing the election in § 901(a). Defendant submits that such a result is so bizarre that Congress clearly could not have intended it."

In a statutory construction analysis, the first step is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."  Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997)); see also Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, 132 S. Ct. 1670, 1680 (2012) ("We begin 'where all such inquiries must begin: with the language of the statute itself.'" (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989))); Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d 629, 644 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2011); Jimenez v. Quarterman, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."); Strategic Hous. Fin. Corp. of Travis Cnty. v. United States, 608 F.3d at 1323 ("When interpreting any statute, we look first to the statutory language."); Mgmt. and Training Corp. v. United States, 115 Fed. Cl. 26, 42 (2014) ("Principles of statutory interpretation dictate that the court begin its analysis with the text of the regulation at issue because, if the terms of the regulation are unambiguous, the plain language of a regulation is controlling.").  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  Robinson v. Shell Oil Co., 519 U.S. at 341 (citing Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477 cert. denied 505 U.S. 1218 (1992); McCarthy v. Bronson, 500 U.S. 136, 139 (1991)).  "'Beyond the statute's text, the traditional tools of statutory construction include the statute's structure, canons of statutory construction, and legislative history.'"  Bartels Trust for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d 1357, 1361 (Fed. Cir.) (quoting Bull v. United States, 479 F.3d 1365, 1376 (2007)), reh'g en banc denied (Fed. Cir. 2010); see also Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, 132 S. Ct. at 1680 ("[W]e consider each question [of statutory interpretation] in the context of the entire statute." (citing Robinson v. Shell Oil Co., 519 U.S. at 341)); Roberts v. Sea-Land Servs., Inc., 132 S. Ct. 1350, 1356 (2012); Bush v. United States, 655 F.3d 1323, 1329 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 2681 (2012).

The initial inquiry into the statutory text ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'"  Barnhart v. Sigmon Coal Co., 534 U.S. at 450 (quoting Robinson v. Shell Oil Co., 519 U.S. at 340); see also Bettcher Indus., Inc. v. Bunzl USA, Inc., 661 F.3d at 644.  In interpreting the plain meaning of the statute, it is the court's duty, if possible, to give meaning to every clause and word of the statute.  See Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. 461, 489 n.13 (2004) ("It is, moreover, "'a cardinal principle of statutory

construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or otherwise insignificant."'" (quoting TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)))); Williams v. Taylor, 529 U.S. 362, 404 (2000) (describing as a "cardinal principle of statutory construction" the rule that every clause and word of a statute must be given effect if possible); see also Setser v. United States, 132 S. Ct. 1463, 1470 (2012) ("Our decision today follows the interpretive rule they invoke, that we must 'give effect . . . to every clause and word' of the Act." (omission in original) (quoting United States v. Menasche, 348 U.S. 528, 538–39 (1955))); Sharp v. United States, 580 F.3d 1234, 1238 (Fed. Cir. 2009). Similarly, the court must avoid an interpretation of a clause or word which renders other provisions of the statute inconsistent, meaningless, or superfluous. See Duncan v. Walker, 533 U.S. at 174 (noting that courts should not treat statutory terms as "surplusage"). "[W]hen two statutes are capable of co-existence, it is the duty of the courts . . . to regard each as effective." Radzanower v. Touche Ross & Co., 426 U.S. 148, 155 (1976); see also Xianli Zhang v. United States, 640 F.3d 1358, 1368 (Fed. Cir.) (citing Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352, 1365 (Fed. Cir. 2005)), reh'g and reh'g en banc denied (Fed. Cir. 2011), cert. denied, 132 S. Ct. 2375 (2012); Hanlin v. United States, 214 F.3d 1319, 1321 (Fed. Cir.), reh'g denied (Fed. Cir. 2000).

When the statute provides a clear answer, the court's analysis is at an end. See Barnhart v. Sigmon Coal Co., 534 U.S. at 450; see also Arko Foods Int'l, Inc. v. United States, 654 F.3d 1361, 1364 (Fed. Cir. 2011) ("'[W]here Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute.'" (quoting Millenium Lumber Distrib., Ltd. v. United States, 558 F.3d 1326, 1328 (Fed. Cir.), reh'g denied (Fed. Cir. 2009)); Am. Airlines, Inc. v. United States, 551 F.3d 1294, 1300 (Fed. Cir. 2008), reh'g granted, 319 F. App'x 914 (Fed. Cir. 2009). Thus, when the "'statute's language is plain, "the sole function of the courts is to enforce it according to its terms."'" Johnson v. United States, 529 U.S. 694, 723 (2000) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. at 241 (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917))); see also Bartels Trust for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d at 1361 (citing Sharp v. United States, 580 F.3d at 1237); Jimenez v. Quarterman, 555 U.S. at 118; Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)); Candle Corp. of Am. v. U.S. Int'l Trade Comm'n, 374 F.3d 1087, 1093 (Fed. Cir.), reh'g and reh'g denied (Fed. Cir. 2004).

Indeed, in construing a statute, courts "'must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" Schindler Elevator Corp. v. United States, 131 S. Ct. 1885, 1891 (2011) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 (2009) (internal quotation marks omitted)). Even "'[w]hen terms used in a statute are undefined, we give them their ordinary meaning.'" Schindler Elevator Corp. v. United States, 131 S. Ct. at 1891 (quoting Asgrow Seed Co. v. Winterboer, 513 U.S. 179, 187 (1995)). Consequently, if a statute is plain and unequivocal on its face, there is usually no need to resort to the legislative history underlying the statute. See Whitfield v.

United States, 543 U.S. 209, 215 ("Because the meaning of [the statute's] text is plain and unambiguous, we need not accept petitioners' invitation to consider the legislative history . . . ."), reh'g denied sub nom. Hall v. United States, 544 U.S. 913 (2005).  But see Chamberlain Grp., Inc. v. Skylink Techs., Inc., 381 F.3d 1178, 1196 (Fed. Cir. 2004) ("Though 'we do not resort to legislative history to cloud a statutory text that is clear,' Ratzlaf v. United States, 510 U.S. 135, 147–48 (1994), we nevertheless recognize that 'words are inexact tools at best, and hence it is essential that we place the words of a statute in their proper context by resort to the legislative history.'" (quoting Tidewater Oil Co. v. United States, 409 U.S. 151, 157 (1972))), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 544 U.S. 923 (2005).

Legislative history may be helpful in certain instances "to shed light on what legislators understood an ambiguous statutory text to mean when they voted to enact it into law."  Bruesewitz v. Wyeth LLC, 131 S. Ct. 1068, 1081–82 (2011) (citing Exxon Mobile Corp. v. Allapatah Servs., Inc., 545 U.S. 546, 568 (2005); see also Xianli Zhang v. United States, 640 F.3d at 1373.  Legislative history, however, does not "trump[] clear text."  Bartels Trust for the Benefit of Cornell Univ. ex rel. Bartels v. United States, 617 F.3d at 1361 (citing Sharp v. United States, 580 F.3d at 1238; Glaxo Operations UK Ltd. v. Quigg, 894 F.2d 392, 396 (Fed. Cir. 1990)).  The Supreme Court has noted, however, that when it appears that the plain language of a statute resolves the issue, a court is to "look to the legislative history to determine only whether there is [a] 'clearly expressed legislative intention' contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." INS v. Cardoza-Fonseca, 480 U.S. 421, 432 n.12 (1987) (citing United States v. James, 478 U.S. 597, 606 (1986); Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)).

The United States Supreme Court also has held that the specific terms of a statute supersede general terms within that statute or within another statute that might otherwise control. See Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 228–29 (1957) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling."  (quoting D. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208 (1932))); see also Bloate v. United States, 559 U.S. 196, 207 (2010); Bulova Watch Co. v. United States, 365 U.S. 753, 761 (1961).  In addition, the Supreme Court has endorsed "the 'normal rule of statutory construction' that 'identical words used in different parts of the same act are intended to have the same meaning.'" Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995) (quoting Dep't of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 342 (1994)); see also Kislev Partners, L.P. ex rel. Bahar v. United States, 84 Fed. Cl. 385, 389, recons. denied, 84 Fed. Cl. 378 (2008).

The language of the amended version of 26 U.S.C. § 6511(d)(3)(A), "the period shall be 10 years from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued," is not clear from the face of the statute. The court, therefore, looks to the legislative history of the Taxpayer Relief Act of 1997, Pub. L. No. 105-34 to assist in determining the meaning of the phrase, "actually paid or accrued." It is not clear to the court from the plain language of the statute what

Congress intended by including the term "actually paid or accrued." In examining the legislative history, plaintiff argues that "[a]lthough the application of section 6511(d)(3)(A) is properly determined strictly on the basis of the plain terms of the statute, the legislative history of the 1997 amendment fully supports Albemarle's position that the phrase "actually paid or accrued"[20] should be construed as a reference to the year in which the Belgian taxes *in fact* accrued (*i.e.*, 2002), rather than the years for which those taxes are *deemed* to have accrued for purposes of claiming the credit (*i.e.*, 1997 and 1998)." (emphasis in original). Plaintiff continues:

> The legislative history of the 1997 amendment establishes Congress's clear decision that the limitations period is to be triggered by *actual* payment or accrual of a foreign tax. In Albemarle's case, even though the Belgian taxes "relate back" to 1997 and 1998 for purposes of claiming the credit, there is no dispute that the taxes were *actually* accrued (and paid) in 2002. The statute of limitations therefore runs from the due date for Albemarle's 2002 tax return.

(emphasis in original). Plaintiff further contends that "[t]he amendatory language chosen was clearly intended to emphasize Congress's decision to have the statute run from the year in which the taxes were *in fact* paid or accrued, rather than from a 'carry' year for which the taxes would be 'deemed paid or accrued' under section 904(c)." (emphasis in original). Plaintiff argues that "[t]he legislative history makes clear that Congress was focused on the particular question of when the limitations period should commence in the case of a foreign tax credit carryforward." By contrast, defendant argues that:

> The legislative history does not support plaintiff's contention that Congress intended to have the 10-year period begin in the year when the contest was ended and not in the year in which the foreign tax is considered to accrue. Plaintiff's extensive reliance on the word "actually" in its opposition

---

[20] The earlier version of the statutory text, 26 U.S.C. § 6511(d)(3)(A), stated:

> If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made.

26 U.S.C. § 6511(d)(3)(A) (1994).

is misplaced since that word does not appear anywhere in the official or unofficial legislative history related to the amendment of § 6511(d)(3).[21]

The parties both acknowledge that the intent of the legislation was to overrule the United States Court of Claims decision in Ampex Corp. v. United States, 223 Ct. Cl. 428, 620 F.2d 853.  Plaintiff notes that "[t]he legislative history makes clear that the 1997 amendment was intended to change the Ampex result," and defendant similarly states "[t]he legislative history indicates that Congress only intended to overturn the result in Ampex Corp. v. United States, 620 F.2d 853 (Ct. Cl. 1980)." In Ampex Corp. v. United States, the Court of Claims wrote:

> Plaintiffs, Ampex Corporation and Geosource, Inc., have brought suit here seeking refunds of $149,747 and $49,855 in federal income taxes paid by Mandrel Industries, Inc. (Mandrel) for Mandrel's taxable years 1963 and 1965, respectively. The refund claims have their genesis in payments made in 1972 by Mandrel to the Government of Libya with respect to the years 1960, 1961, and 1962. Claims for refund were filed on March 6, 1974, asserting overpayments of federal income tax for 1963 attributable to foreign tax credit carryovers from 1961 and 1962 to 1963 as a result of the 1972 Libyan payments, and overpayments for 1965 attributable to a carryover of an investment tax credit to 1965 from 1963 where it could not be used due to the carryover of the foreign tax credit to that year.[[22]]

Ampex Corp. v. United States, 620 F.2d at 854–55 (footnote omitted).  At the time the Ampex plaintiffs filed, the pre-amended language of 26 U.S.C. § 6511(d)(3) applied. Therefore, if the court determined the years the claims were made was 1961 and 1962, ten years would have passed and the taxpayer's claims would be untimely, but if the court concluded the carryover year, 1963 was the year the claims were made, then the statute of limitations would not begin to run until March 15, 1964, i.e., the filing deadline for the 1963 tax return.[23]   The Ampex court held the taxpayer's claims were timely, concluding that

---

[21] Defendant is correct that the word "actually" does not appear in the Congressional Reports or the "General Explanation of Tax Legislation Enacted in 1997" from the Staff of the Joint Committee on Taxation.

[22] Plaintiff notes that "[t]here is no indication that the Libyan taxes at issue in Ampex had been contested by the taxpayer."

[23] The Ampex court explained:

> For example, assume that foreign taxes in excess of the per-country limitation of section 904(a)(1) are paid or accrued for 1961. Even though, under section 904(d), such excess may be carried back to 1959 and 1960, and may be carried over to 1962, 1963, 1964, 1965, and 1966, the determinative year for the period for making the choice of taking a credit or deduction with respect to these taxes is 1961 (in the normal case this

section 6511(d)(3)(A) should be construed in accordance with the normal understanding of its language, and that plaintiffs' claims for refund were timely filed with the Internal Revenue Service. Defendant has failed to convince us that a different interpretation should be ascribed to the statutory language. In addition to its other arguments, the defendant has advanced several policy considerations which it maintains favor the result it advocates. These further contentions do not merit discussion, because in our opinion, it is quite clear that they are not sufficient to overcome the presumption that Congress "meant what it enacted."

Ampex Corp. v. United States, 620 F.2d at 862.  Regarding the government's argument in Ampex that the legislative history "establish[es] that Congress intended the period for making a choice between a credit and a deduction to commence in the year from which the excess foreign taxes are carried," the Ampex court noted that "having earlier concluded that the language of section 6511(d)(3)(A) is clear on its face, we do not think it is so persuasive that it can overcome the plain meaning of the words of section 6511(d)(3)(A)."  Ampex Corp. v. United States, 620 F.2d at 861.

The legislative history to the Taxpayer Relief Act of 1997 confirms the parties' general agreement about the intention of the amended law.  The House Report to the Taxpayer Relief Act of 1997, states in part:

*Present Law*

U.S. persons may credit foreign taxes against U.S. tax on foreign source income. The amount of foreign tax credits that can be claimed in a year is subject to a limitation that prevents taxpayers from using foreign tax credits to offset U.S. tax on U.S. source income. Separate limitations are applied to specific categories of income. The amount of creditable taxes paid or accrued in any taxable year which exceeds the foreign tax credit limitation is permitted to be carried back two years and carried forward five years.

For purposes of the period of limitations on filing claims for credit or refund, in the case of a claim relating to an overpayment attributable to foreign tax credits, the limitations period is ten years from the filing date for

---

period will expire March 15, 1965, in the case of a corporation, and April 15, 1965, in the case of any other taxpayer). Assuming a timely election for 1961, no amount may be used as a credit for any taxable year to which the 1961 taxes may be carried unless, for that other year also, the choice of the foreign tax credit route (in lieu to the deduction route) was also made within the time prescribed for such other taxable year.

Ampex Corp. v. United States, 620 F.2d at 861.

the taxable year with respect to which the claim is made. The Internal Revenue Service has taken the position that, in the case of a foreign tax credit carryforward, the period of limitations is determined by reference to the year in which the foreign taxes were paid or accrued (and not the year to which the foreign tax credits are carried) (Rev. Rul. 84–125, 1984–2 C.B. 125). However, the court in Ampex Corp. v. United States, 620 F.2d 853 (1980), held that, in the case of a foreign tax credit carryforward, the period of limitations is determined by reference to the year to which the foreign tax credits are carried (and not the year in which the foreign taxes were paid or accrued).

*Reasons for Change*

The Committee believes that it is appropriate to identify clearly the date on which the ten-year period of limitations for claims with respect to foreign tax credits begins.

*Explanation of Provision*

Under the bill, in the case of a claim relating to an overpayment attributable to foreign tax credits, the limitations period is determined by reference to the year in which the foreign taxes were paid or accrued (and not the year to which the foreign tax credits are carried). No inference is intended regarding the determination of such limitations period under present law.

H.R Rep. No. 105-148, at 552–53 (1997). The Senate Report and the "General Explanation of Tax Legislation Enacted in 1997" from the Staff of the Joint Committee on Taxation indicates the same.

The only case to discuss Ampex after the 1997 amendment is Chrysler Corp. v. Commissioner, 436 F.3d at 644, a 2006[24] decision by the United States Court of Appeals for the Sixth Circuit.[25] In Chrysler, the Sixth Circuit held that statute of limitations period for claiming foreign tax credit begins with the date prescribed by law for filing a tax return for the year from which excess foreign taxes are carried.  As described by the Sixth Circuit:

---

[24] The Sixth Circuit, noted, however, even though the decision was after the amendments, the pre-amended version applied to the facts in its case.  See Chrysler Corp. v. Comm'r, 436 F.3d at 652 n.3.

[25] Indeed, Chrysler is the only case to discuss Ampex after 1982.  See Trans-Lux Corp. v. United States, No. 123-79T, 1982 WL 11262 (Ct. Cl. March 9, 1982), aff'd, 696 F.2d 963 (Fed. Cir. 1982); see also Harold v. United States, 225 Ct. Cl. 168, 634 F.2d 547 (1980).

Chrysler experienced dire financial difficulties in the late 1970s and early 1980s. In the tax years 1980 through 1982, it reported no taxable domestic income and paid no taxes to the United States. However, it did pay foreign taxes during that period. Rather than elect to take a credit for foreign taxes paid, 26 U.S.C. § 901(a), Chrysler took a tax deduction, 26 U.S.C. § 164(a)(3), for those years. These deductions were substantial: $34,556,085 (1980); $7,020,844 (1981); and $3,631,958 (1982).

On July 6, 1992, the Commissioner informed Chrysler of tax deficiencies for the years 1984 and 1985. In an attempt to reduce that liability, the company filed amended tax returns on July 24, 1995 for the years 1980 through 1985. At the time that it filed those amended returns, only years 1983 through 1985 were open for purposes of assessment of tax by the Commissioner or for a claim of credit or refund by Chrysler. Nonetheless, Chrysler sought to amend its 1980 through 1982 returns to change the foreign tax deductions to foreign tax credits, which could then be carried forward to its tax liabilities for 1984 and 1985.

Chrysler Corp. v. Comm'r, 436 F.3d at 651-52.  After a review of the statutes involved, including 26 U.S.C. § 6511 and 26 U.S.C. § 901, the Chrysler court determined that that statute of limitations period for claiming foreign tax credit begins with date prescribed by law for filing a tax return for the year from which excess foreign taxes are carried. Chrysler Corp. v. Comm'r, 436 F.3d at 654. The Chrysler court recognized that its conclusion was different than that of the United States Court of Claims in Ampex, which the Chrysler court noted had determined that, "'if the time of the commencement of the limitations period of section 6511(d)(3)(A) is to be determined solely on the basis of the language of that section, the limitations period begins to run on the date prescribed by law for filing the return for the year for which a refund is sought.'"  Chrysler Corp. v. Comm'r, 436 F.3d at 655 (quoting Ampex Corp. v. United States, 223 Ct. Cl. 428, 620 F.2d at 858).  The Sixth Circuit concluded however, "[i]n our view, the most reasonable reading of these two statutes is that the 'such taxable year' of § 901(a) and the 'year with respect to which the claim is made' of § 6511(d)(3)(A) refer to the same year: the year in which the taxpayer first made its election whether to claim a foreign tax credit." Chrysler Corp. v. Comm'r, 436 F.3d at 655. The Sixth Circuit continued: "In our view, however, nothing in the language of § 6511(d)(3)(A) alters our initial reading of § 901(a), which fixes the year in question as the year of election. All that § 6511(d)(3)(A) provides to the taxpayer is a longer limitations period for altering its election of a foreign tax credit than the three-year limitations period prescribed by § 6511(a). The touchstone for triggering the statute of limitations remains the original year of election." Chrysler Corp. v. Comm'r, 436 F.3d at 655.

The Chrysler court further wrote:

Before concluding, we will take a moment to mention four considerations that lend additional support to our reading of the statutes. First, we agree

with Chrysler that Congress permits the use of foreign tax credits in order to allow taxpayers to avoid double taxation. However, Chrysler did not come away empty-handed because it initially elected not to take foreign tax credits for the years in question; it claimed deductions based upon those foreign taxes and, presumably, there were valid accounting reasons for its choice. That it was dilatory in seeking to amend its returns in order to claim foreign tax credits for the years in dispute does not alter the fact that it received some tax benefit for foreign taxes paid. Second, that Congress passed "clarifying" language to the phrase of § 6511 in dispute—prospectively amending "for the year with respect to which the claim is made" to "for the year in which such taxes were actually paid"— suggests that our reading is correct. Third, our reading avoids the uncertainty that would attend Chrysler's interpretation, which could lead to a shorter or longer limitations period depending on the unique fiscal circumstances of the taxpayer. And, fourth, we are obliged to strictly construe statutes that grant a deduction to a taxpayer in favor of the government.

Chrysler Corp. v. Comm'r, 436 F.3d at 656 (internal citation and footnote omitted).[26]

Plaintiff attempts to argue that "[t]o the extent that Ampex and Chrysler are in conflict regarding the proper interpretation of pre-amendment section 6511(d)(3)(A), this Court must adhere to Court of Claims decision in Ampex, notwithstanding the amendment of the statute by Congress in 1997.  See Bankers Trust New York Corp. v. United States, 225 F.3d 1368, 1373-76 (Fed. Cir. 2000)."  As a general rule, Court of Claims decisions are precedential and controlling on this court.  See Principal Mut. Life Ins. Co. v. United States, 50 F.3d 1021, 1025 (Fed. Cir.), reh'g denied, in banc suggestion declined (Fed. Cir. 1995); South Corp. v. United States, 690 F.2d 1368, 1369 (Fed. Cir. 1982); see also Joslyn v. United States, 110 Fed. Cl. 372, 388 n.10 (2013) (citing South Corp. v. United States, 690 F.2d at 1369) ("The United States Court of Claims (Court of Claims) is the predecessor court to this court and a predecessor to the United States Court of Appeals for the Federal Circuit. When acting in its appellate capacity, the Court of Claims created precedent that is binding on this court."). As agreed to by the parties, however, the specific intent in legislative history to the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, was to change the Ampex result. Therefore, plaintiff's argument is a fundamental misreading of Bankers Trust.   The Federal Circuit's decision in Bankers Trust addressed the Court of Federal Claims' decision to defer to an agency's interpretation notwithstanding an earlier Court of

---

[26] The court makes special mention of the Chrysler court's description that Chrysler was "dilatory in seeking to amend its returns in order to claim foreign tax credits for the years in dispute. . . ."  Chrysler Corp. v. Comm'r, 436 F.3d at 656. In the above captioned case, Albemarle S.A. made full payment to the Belgian tax authorities in the amount of $1,416,740.00 in 2002.  It was not until May 15, 2009, or seven years after the Belgian withholding taxes were paid by Albemarle S.A. that plaintiff filed an administrative refund claim with the United States IRS.

Claims decision interpreting the same statute. <u>See generally Bankers Trust New York Corp. v. United States</u>, 225 F.3d 1368. In <u>Bankers Trust</u>, the Federal Circuit focused on the decision by a Judge of the Court of Federal Claims to defer to the IRS as an agency and noted that the Supreme Court, in <u>Neal v. United States</u>, 516 U.S. 284 (1996), was "unequivocal in its assertion that the Court's interpretation of a statutory provision trumps a subsequent <u>agency</u> interpretation that is inconsistent with the Court's precedent." <u>Bankers Trust New York Corp. v. United States</u>, 225 F.3d at 1375 (emphasis added). The Federal Circuit explained that "the Supreme Court's reasons for adhering to its prior decisions in this context reflect the relationship of the Judiciary to Congress and the ability of Congress to change its statutes to correct a misinterpretation by the Court." <u>Id.</u> (citing <u>Neal v. United States</u>, 516 U.S. at 295-96). The Federal Circuit continued:

> It is a fundamental principle of Constitutional law that the duty to interpret the statutes as set forth by Congress is a duty that rests with the judiciary: "It is, emphatically, the province and duty of the judicial department, to say what the law is." <u>Marbury v. Madison</u>, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803). In executing this duty, we may not give the IRS or any executive branch agency the power to overrule an established statutory construction of the court—a power that, with regard to our prior precedents, even a later panel of this court lacks.

<u>Bankers Trust New York Corp. v. United States</u>, 225 F.3d at 1376. Plaintiff argues, citing <u>Bankers Trust</u>, that although Congress amended 26 U.S.C. § 6511 for the specific reason of overruling the result in <u>Ampex</u>, this court "must adhere" to the decision in <u>Ampex</u>. <u>Bankers Trust</u>, however, speaks only to the court's hesitancy to defer to an agency's interpretation, not to subsequent Congressional action. As it applies to the above captioned case, Congress was specific as to its intent to overrule <u>Ampex</u> by the 1997 amendments, which is supported by the Sixth Circuit decision in <u>Chrysler</u>. <u>See generally Chrysler Corp. v. United States</u>, 436 F.3d 644. Given the statutory change subsequent to the 1980 Court of Claims decision in <u>Ampex</u>, the precedential nature of the <u>Ampex</u> decision is eliminated and this court is not bound by the Court of Claims decision in <u>Ampex</u>.

Regarding the legislative history, the defendant notes that Congressional Reports for the 1997 amendments refer to Revenue Ruling 84–125, issued in 1984. Revenue Ruling 84–125, indicates in part, "the question of when the foreign tax accrues is still governed by section 461."[27] Plaintiff dismisses the importance of Revenue Ruling 84–125, arguing that "the legislative citation to the 1984 ruling sheds no light on how Congress intended the 1997 amendment to apply to contested foreign taxes. Congress

---

[27] The House Report cites to Revenue Ruling 84-125 to draw a distinction between the <u>Ampex</u> decision and the expressed IRS' view that, "[t]he Internal Revenue Service has taken the position that, in the case of a foreign tax credit carryforward, the period of limitations is determined by reference to the year in which the foreign taxes were paid or accrued (and not the year to which the foreign tax credits are carried) (Rev. Rul. 84–125, 1984–2 C.B. 125)." H.R. Rep. No. 105-148, at 552-53.

cited the 1984 ruling because it reached a conclusion contrary to <u>Ampex</u>," noting that neither the Revenue Ruling nor the legislative history address a contested tax. Regardless, plaintiff argues that "even if Congress did focus on the contested tax analysis of Rev. Rul. 84-125, for which there is no evidence whatever, it is impossible to say that the legislative history of the 1997 amendment provides a 'clearly expressed' intention that conflicts with the plain meaning of the statute."

Defendant claims, however, that "[s]ince that Ruling [Revenue Ruling 84–125] was specifically cited by Congress in the legislative history related to the amendment of § 6511(d)(3), it is clear that Congress did not intend to overturn the long-standing relation back doctrine with respect to the accrual of foreign taxes." The Revenue Ruling, after identifying the various years at issue and using "x" as a stand in, indicates that

> the portion of contested foreign tax that is actually paid by the taxpayer is accruable for the taxable year to which the foreign tax liability relates, as provided in section 905(a), and such accrual can be made at the time of payment, even though the amount of the tax liability is not finally determined at the time of payment.

> Accordingly, in 1973 X is allowed to claim a foreign tax credit of 5x dollars for the amount of the additional foreign tax assessment actually paid by X in 1973, which accrues for the taxable year 1971 pursuant to section 905(a) of the Code. In 1978, subsequent to the final determination of X's additional foreign tax liability, X is allowed to claim a foreign tax credit of 15x dollars which accrues for the taxable year 1971, representing the difference between the portion of the total foreign tax assessment for which X is finally determined to be liable (20x dollars) and the amount previously paid and claimed by X in 1973 (5x dollars).

Rev. Rul. 84-125.  The Revenue Ruling concludes:

> The period of limitation prescribed in section 6511(d)(3)(A) of the Code for claiming a foreign tax credit is determined by reference to the year for which the taxes were paid or accrued and not to the carryover year. See Rev. Rul. 75-268, 1975-2 C.B. 294.

> Although 5x dollars of the total tax assessment of 100x dollars was paid in 1973 and 15x dollars of that assessment was paid in 1978, the total of 20x dollars in foreign taxes paid is considered accruable for 1971, the year to which it relates. Consequently, the 10-year period of limitation prescribed in section 6511(d)(3)(A) of the Code is determined with reference to the due date of X's 1971 Federal corporate income tax return, March 15, 1972, even though the foreign tax credit will be carried forward to X's 1972 taxable year. See Rev. Rul. 77-487, 1977-2 C.B. 479.

Rev. Rul. 84-125.  Although the plaintiff argues that the legislative history is silent regarding contested taxes, the reference to the Revenue Ruling demonstrates an awareness of the issue on the part of Congress when it considered amending the text of 26 U.S.C. § 6511.

Moreover, the relationship between 26 U.S.C. § 904 and 26 U.S.C. § 6511(d), further supports using 1998 and not 2002 as the benchmark date for the accrual. Pursuant to 26 U.S.C. § 904(a), "[t]he total amount of the credit taken under section 901(a) shall not exceed the same proportion of the tax against which such credit is taken which the taxpayer's taxable income from sources without the United States (but not in excess of the taxpayer's entire taxable income) bears to his entire taxable income for the same taxable year." As noted above, Section 904(c) of the Tax Code states in part: "Carryback and carryover of excess tax paid.-- Any amount by which all taxes paid or accrued to foreign countries or possessions of the United States for any taxable year for which the taxpayer chooses to have the benefits of this subpart exceed the limitation under subsection (a) shall be deemed taxes paid or accrued to foreign countries or possessions of the United States in the first preceding taxable year and in any of the first 10 succeeding taxable years, in that order and to the extent not deemed taxes paid or accrued in a prior taxable year. . . ." As the aim of the relevant change to the tax laws in 1997 was to the carryover provision of 26 U.S.C. § 904, and Section 904 uses the phrase "deemed taxes paid or accrued," the addition of the word "actually" in the amendment does not appear to be aimed at drawing a distinction with the phrase "deemed," rather than providing additional specificity to the term "accrued."[28]

Therefore, as it applies to the case before the court, the foreign tax credit would be based on Albemarle's 1998 income, not its 2002 income.  If the foreign tax credit is to be based on a determination made by plaintiff in 1998 as to whether to elect to take the credit, and the amount of the credit is based on the plaintiff's 1998 income, the statute of limitations for the foreign tax credit should be linked to 1998.  As counsel for defendant stated at oral argument, "if you look at the complaint, they're seeking a refund for '97 and a refund for '98.  They don't claim that they're entitled to a refund for 2002."

Likewise, 26 U.S.C. § 905(a) provides that "[t]he credits provided in this subpart may, at the option of the taxpayer and irrespective of the method of accounting employed in keeping his books, be taken in the year in which the taxes of the foreign

---

[28] At oral argument defendant's counsel argued that

the "actually" was just for emphasis in order to differentiate – the "accrued" is used in the legislative history in the statute from "deemed accrued" as used in 904(c), which is what Congress was looking at. They were looking at carryovers in 904(c). There's nothing to indicate that they intended to create this hydra of multi-limitation periods beginning at different times and potentially extending the statute for the tax year indefinitely.

43

country or the possession of the United States accrued. . . ." 26 U.S.C. § 905(a).[29]  A bifurcated system for contested and uncontested foreign taxes would raise issues for the application of Section 905.  Section 905(c)(5) provides that for "any redetermination under paragraph (1) by the Secretary of the amount of tax due from the taxpayer for the year or years affected by a refund, the amount of the taxes refunded for which credit has been allowed under this section shall be allowed by the amount of any tax described in section 901 imposed by the foreign country or possession of the United States with respect to such refund; but no credit under this subpart, or deduction under section 164, shall be allowed for any taxable year with respect to any such tax imposed on the refund."  26 U.S.C. § 905(c)(5).

The court agrees with the defendant's contention that "[t]he interrelationship between the election to take the credit and the limitation period for filing a claim for refund based on that credit is one reason the contested foreign tax liability must relate back to the year to which it relates, and for which the election to take the credit was made, and is treated for all purposes as having accrued in that year. Otherwise the necessary symmetry between the provisions of § 901 and § 6511(d)(3) is lost." This is especially true if there was a clear limitations period for an uncontested portion of a tax year, and then an undefined limitations period for a contested portion of a tax year.  For example, plaintiff's position would allow for the limitation period for any uncontested Belgian tax for 1997 and 1998 to begin on March 15, 1998 and 1999, but the limitation for any contested Belgian tax, for the same years, to begin on March 15, 2003.  As the United States Supreme Court has made clear, "[i]ncome taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action." Comm'r v. Sunnen, 333 U.S. 591, 597 (1948); see also Lewis v. Reynolds, 284 U.S. 281 (1932); Annex, Inc. v. United States, 384 F.3d 1368, 1371 (Fed. Cir. 2004); Dysart v. United States, 169 Ct. Cl. 276, 340 F.2d 624 (1965).

If the statute of limitations for the contested portion could be postponed indefinitely, the taxpayer would, in essence, have two separate tax returns.  The language of 26 U.S.C. § 901 is reliant on the language of 26 U.S.C. § 6511, as reflected in both the Treasury Regulations and 26 U.S.C. § 901, as an election to credit or deduct foreign taxes paid or accrued in a particular tax year can be made or changed any time before the expiration of the limitations period in 26 U.S.C. § 6511(d)(3).  See 26 U.S.C. § 901(a); Treas. Reg. § 1.901-1(d); 26 U.S.C. § 6511(d)(3).  Moreover, if the court were to adopt plaintiff's view that the limitation period for the portion of the Belgian income tax it contested did not begin to run until 2002, even if the period of limitation for filing a claim on the uncontested portion of the foreign tax began on the respective due dates of the tax returns, it could lead, as defendant alleges, "to the anomalous result of there being two different limitations periods for claims for refund filed for foreign taxes that accrued in the same tax year, based on the same foreign source income." In response, plaintiff argues that election rules are not implicated in Albemarle's claims before this court, but concedes that, "[t]he election to claim a credit or a deduction for any given

---

[29] As noted above, the Cuba Railroad decision indicated that the contested tax doctrine did not apply to determine the proper year of accrual of foreign taxes for purposes of the foreign tax credit for the predecessor statute to 26 U.S.C. § 905.

year, whenever made, applies to *all* taxes paid or accrued in that year. Separate election periods for contested and uncontested taxes would be contrary to that basic rule and would not be allowed." (emphasis in original; citations omitted).

Furthermore, plaintiff's framework of accruing the credit in one tax year and actually accruing the liability for purposes of the statute of limitations in another could run afoul of the Supreme Court's pronouncement in <u>United States v. Olympic Radio and Television</u>, that courts "can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit. We would not be faithful to the statutory scheme, as revealed by the words employed, if we gave 'paid or accrued' a different meaning for the purposes of section 122(d)(6) than it has in the other parts of the same chapter." <u>United States v. Olympic Radio and Television</u>, 349 U.S. 232, 235 (1955).

In the above captioned case, the court notes that plaintiff delayed seven years to file its refund claims at the IRS for the contested Belgian income tax after the Belgian tax issue was resolved. At oral argument, plaintiff's counsel conceded there was no good reason for the delay, indicating that "[t]he explanation, though[30] not in the record, is there was a substantial change of personnel in the company and the new people finally realized they hadn't filed." Therefore, the reason plaintiff is impacted at all by the generally generous ten year statute of limitations for the foreign tax credit is delay on its own part. Plaintiff's plight might have generated more sympathy if the Belgian tax dispute not been resolved within the ten year timeframe for the statute of limitations, and through no fault of its own, plaintiff was not able to timely file a claim for refund because a foreign tax was still being contested. In this case, however, this is a situation in which the dispute with the foreign sovereign was resolved within ten years, and instead plaintiff filed in the seven years after resolution of the Belgium tax issue. Moreover, the plaintiff never filed a protective refund claim for the 1998 tax year. <u>See</u> Treas. Reg. § 301.6402-2.[31]. The court also notes that the application of the relation back doctrine would not typically impact a foreign tax credit case. Indeed, the last three tax years, 1999, 2000, and 2001, filed as part of the administrative claim with the IRS on May 15, 2009 were considered timely by the IRS and were processed. Under either the government's theory or plaintiff's theory, the claims for the 1999, 2000, and 2001 tax years were not barred by the statute of limitations.

Moreover, plaintiff confuses the issues in the case by agreeing that its claims relate back for the purposes of claiming the foreign tax credit, but for purposes of the statute of limitations the claims did not accrue until 2002. Although at times in its filings in this court, plaintiff uses language which seems to suggest that the taxes should relate back to 1998, plaintiff still holds firm that the payment alone forms the actual accrual.

---

[30] The transcript indicates "[t]he explanation, thought [sic] not in the record," however, the court believes this is an error in the transcript.

[31] The court notes that Treas. Reg. § 301.6402-2 has not changed from 1998 to the present.

For example, plaintiff claims that "[i]n Albemarle's case, even though the Belgian taxes 'relate back' to 1997 and 1998 for purposes of claiming the credit, there is no dispute that the taxes were *actually* accrued (and paid) in 2002. The statute of limitations therefore runs from the due date for Albemarle's 2002 tax return." (emphasis in original). The court finds that the statute of limitations is triggered by the 1998 date, and, the $412,923.00 in foreign taxes paid by plaintiff in 2002 relate back to the 1998 tax year. Therefore, the ten year statute of limitations period as provided in 26 U.S.C. § 901(a) began to run pursuant to the amended 26 U.S.C. § 6511(d)(3)(A), on March 15, 1999.[32] As plaintiff filed its administrative claim with the IRS on May 15, 2009, plaintiff's filing was untimely and the statute of limitations precludes jurisdiction in this court for plaintiff's 1998 tax year.

Plaintiff's 1997 Tax Year

Regarding the 1997 tax year, defendant claims that plaintiff's 1997 tax refund claim was not filed within the jurisdictional timeframe of 26 U.S.C. § 6511(d)(3)(A). Plaintiff disagrees.  Unlike the 1998 tax year, the parties disagree as to which version of 26 U.S.C. § 6511 applies for the 1997 tax year. As noted above, the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, amended 26 U.S.C. § 6511.  The pre-amended version of 26 U.S.C. § 6511(d)(3)(A) stated:

> If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made.

26 U.S.C. § 6511(d)(3)(A) (1994).   The amended (and current) version of 26 U.S.C. § 6511(d)(3)(A) states:

> If the claim for credit or refund relates to an overpayment attributable to any taxes paid or accrued to any foreign country or to any possession of the United States for which credit is allowed against the tax imposed by subtitle A in accordance with the provisions of section 901 or the provisions of any treaty to which the United States is a party, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be 10 years from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued.

26 U.S.C. § 6511(d)(3)(A).  The difference between the two versions is the phrase, "the period shall be 10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made," in the pre-amended version versus the phrase,

---

[32] As noted above, March 15, 2009 was the due date for plaintiff's 1998 taxes.

"the period shall be 10 years from the date prescribed by law for filing the return for the year in which such taxes were actually paid or accrued," in the amended version. Section 1056(b) to the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, provides that: "The amendment made by subsection (a) [amending 26 U.S.C. § 6511] shall apply to taxes paid or accrued in taxable years beginning after the date of the enactment of this Act."[33]

Defendant argues that "[t]he amendments to § 6511(d)(3)(A) in the Taxpayer Relief Act of 1997 were effective for tax years beginning on or after August 5, 1997. Plaintiff's 1997 tax year began on January 1, 1997. Therefore the period in 26 U.S.C. § 6511(d)(3)(A), within which plaintiff had to timely file a refund claim for 1997 based on a foreign tax credit, was '10 years from the due date of the return to which the claim relates,'" or apply the pre-amended version of 26 U.S.C. § 6511(d)(3)(A). (citations omitted). Plaintiff, does not focus on when its 1997 tax year began, but when the taxes were paid or accrued, and argues that "[b]ecause there is no dispute that the foreign taxes involved in this case accrued (and were paid) in 2002, the plain terms of the effective date provision make clear that the amended version of the statute applies to Albemarle's 1997 claim." (internal citation omitted).

Initially, the court must determine if the language, "[t]he amendment made by subsection (a) [amending 26 U.S.C. § 6511] shall apply to taxes paid or accrued in taxable years beginning after the date of the enactment of this Act," simply means to examine if the taxpayer's tax year began August 5, 1997. If that is the case, then the pre-amended language applies to Albemarle's 1997 tax year. No court decision, either in this court, in any other federal court, or in the Tax Court, appears to have analyzed the relevant language. The court declines to draw such a bright-line rule as defendant seeks. The language in the clause also states "shall apply to taxes paid or accrued." To simply look only at the date of the tax year renders an examination of "paid or accrued" superfluous. As noted above, in a statutory construction analysis, the court should, if possible, give meaning to every clause and word of the statute, see Alaska Dep't of Envtl. Conservation v. EPA, 540 U.S. at 489 n.13, and should avoid an interpretation of a clause or word which renders other provisions of the statute inconsistent, meaningless, or superfluous. See Duncan v. Walker, 533 U.S. at 174. Therefore, in order to avoid an interpretation of a clause which renders it superfluous, the court determines that the language of the amendment to 26 U.S.C. § 6511 which applies to "taxes paid or accrued in taxable years beginning after the date of the enactment of this Act," does not require application to all tax years beginning before August 5, 1997. See Taxpayer Relief Act of 1997, Pub. L. No. 105-34. Moreover, the language of "taxable years beginning after the date of the enactment of this Act," implies that that the law was to impact tax years going forward, rather than applying to the ongoing tax year.

Alternatively, defendant claims that "[p]laintiff does not dispute that under the relation-back doctrine the Belgian taxes it paid in 2002, for its 1997 tax year, relate back to 1997 and 'accrued' in that year." Therefore, defendant argues plaintiff "concedes that

---

[33] The undisputed date of enactment of the Taxpayer Relief Act of 1997 is August 5, 1997.

the Belgian tax in question 'accrued' in 1997.  Since plaintiff's 1997 tax year began before August 5, 1997, the amended § 6511(d)(3) does not apply to plaintiff's claim for refund for that year."[34]  Although plaintiff would disagree with defendant's characterization of any concession, plaintiff does not directly address defendant's argument, plaintiff indicates that the claims could not fall under the pre-1997 statute as plaintiff argues there is "no dispute that the foreign taxes involved in this case accrued (and were paid) in 2002. . . ."

As described above, the proper approach to resolve whether plaintiff's claim accrued is the relation back doctrine.  Applying the relation back doctrine, the year of accrual for plaintiff's claim is 1997.  Therefore, the court determines that the pre-1997 version of 26 U.S.C. § 6511(d) applies to plaintiff's 1997 tax year.  The operative phrase in pre-1997 version of 26 U.S.C. § 6511(d) is "the period shall be 10 years from the date prescribed by law for filing the return for the year with respect to which the claim is made."  Defendant correctly notes that "[i]t is not disputed that plaintiff's claim is for 1997, and that the due date of its return for that year was March 15, 1998."  Unlike the amended version of 26 U.S.C. § 6511(d), which contains the phrase "such taxes were actually paid or accrued," the pre-1997 version speaks only to the year the claim is made.  In its filings with the court, plaintiff did not address the outcome of plaintiff's 1997 claim if the pre-1997 version applies.  Plaintiff is seeking a refund claim for its 1997 tax year.  Therefore, the "year with respect to which the claim is made" is 1997.  As a result, the ten year statute of limitations period as provided in 26 U.S.C. § 901(a) started to run on March 15, 1998,[35] and by filing the administrative claim on May 15, 2009, the statute of limitations precludes jurisdiction in this court for plaintiff's 1997 tax year.  See Chrysler Corp. v. Comm'r, 436 F.3d at 682.

The court notes that even if the 1997 amendments were to apply to Albemarle's 1997 tax year, the result would not change.  Notably, the facts of Albemarle's 1997 tax year are identical to the 1998 tax year, including the amount of the refund, except that Albemarle filed its 1997 tax return on September 15, 1998 instead of September 15, 1999, as it did for its 1998 tax return.  As with the 1998 tax year, Albemarle S.A. did not pay any Belgian withholding tax with regard to the interest payments on the debentures prior to October 22, 2001 because Albemarle S.A., believed that the interest payments made on the debentures were exempt from Belgian withholding tax, and the Belgian tax authorities issued the notice of adjustment which impacted both tax years. The December 3, 2001 protest to the Belgian authorities encompassed both tax years, as did the January 31, 2002 agreement.  Moreover, the 1997 tax year and 1998 tax year were part of the same Form 1120-X claim submitted to the IRS on May 15, 2009. Moreover, plaintiff's delay in filing its claim after the resolution of the Belgian tax issue was the same seven years as it was for the 1998 claim, and even the amount of the foreign tax credit that plaintiff sought was identical in both tax years - $412,923.00.

[34] At oral argument, defendant contended that "regardless of how the Court resolves the statutory interpretation issue, the taxpayer still is not entitled to any claim for '97."

[35] As noted above, March 15, 2008 was the due date for plaintiff's 1997 taxes.

Plaintiff did not file a protective refund claim for either the 1997 tax year or the 1998 tax year. <u>See</u> Treas. Reg. 301.6402-2.[36]  Therefore, if the amended version of 26 U.S.C. § 6511 were to apply, for the same reasons as identified regarding plaintiff's 1998 tax year, if the contested Belgium taxes paid by plaintiff in 2002 relate back to 1997, and the $412,923.00 in foreign taxes paid by plaintiff in 2002 relates to the 1997 tax year, the court draws the same conclusions for the 1997 tax year as it did regarding the 1998 tax year: The $412,923.00 in foreign taxes paid by plaintiff in 2002 relates back to the 1997 tax year for the purposes of its 1997 tax refund claim. Plaintiff's claim for its 1997 tax refund accrued a year earlier than the plaintiff's claim for its 1998 tax refund, which the court already has determined was barred by the statute of limitations. The ten year statute of limitations period began to run on March 15, 1998. As plaintiff filed its administrative claim with the IRS on May 15, 2009, the ten year statute of limitations bars jurisdiction in this court for plaintiff's 1997 tax year refund claim.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss is **GRANTED**. Plaintiff's complaint is **DISMISSED**, without prejudice.  The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

<u>s/Marian Blank Horn</u>
**MARIAN BLANK HORN**
**Judge**

---

[36] The court notes that Treas. Reg. 301.6402-2 was identical in 1997 and 1998, and remains unchanged today.